THE MAYOR AND CITY COUNCIL OF BALTIMORE, *vs.* WILLIAM B. NORMAN, by DANIEL SPRIGG, his next Friend.

A guardian transferred stock standing in the name of his ward on the books of a corporation; the certificates of the stock were cancelled by the corporation and others issued to the transferee. HELD:

That this was a *sale or removal* within the meaning of the act of 1843, ch. 304, and having been done without the order of the orphans court as required by that act, is void, and the rights of the ward are not affected by it.

An infant may sue in *trover* by *prochein ami*, though he has at the time a duly appointed and qualified guardian.

As a general rule the plaintiff in *trover* must show that he had, at the time of the conversion, both a property general or special in, *and* the *actual* or the right to the *immediate* possession of, the chattel.

For the purpose of sustaining *trover* the right of possession is common both to the guardian and infant, the possession or right of possession in the one being the right of possession of the other as against third parties.

Where there is a general and special property to the same chattel in different persons, either may, in most cases, sue in *trover*, but a judgment obtained by one is a bar to an action by the other.

In the absence of a statutory guardian, the *natural guardian* is invested with as full power to sue in *trover* for the conversion of the infant's property as the former.

It is no ground for the reversal of a judgment that the prayer of the appellee submits an immaterial question to the jury, by which his own case was prejudiced rather than that of the appellant.

Where a guardian transfers stock standing in the name of his ward, without the order of the court required by the act of 1843, ch. 304, and the corporation cancels the certificates and issues others to the transferee, this is such a tortious conversion of the ward's property by the corporation as to dispense with the necessity of demand and refusal before suit in *trover*.

In legal contemplation all persons are presumed to know the existence and nature of the public statutes of the State, and are responsible for their violation.

It is error to grant a prayer which submits to the jury to find the *market* value of the bonds converted, when the only evidence of *value* is the bonds themselves; the bonds proved their *par value*, but from this no legal inference could be drawn of their *market value*.

APPEAL from Baltimore county court.

This was an action of *trover*, brought on the 2nd of November 1850, by the appellee, Norman, an infant, by Sprigg, as his *prochein ami*, against the appellants, to recover the value of three certificates of stock particularly described in the declaration. Plea, *non cul*.

*Exception.* By the will of Talbott Jones, and a decree of the court of chancery carrying out the trusts thereof, the plaintiff, (then and still an infant, being at the time of the trial about thirteen years of age,) became entitled to certain stock of the corporation of the city of Baltimore. Michael S. Norman was, on the 27th of December 1838, appointed his guardian, but this appointment was revoked on the 25th of October 1843, by the orphans court, and Samuel Jones, Jr., appointed in his stead, which latter appointment was also revoked on the 8th of January 1847, and Daniel Sprigg, the *prochein ami* in this suit, appointed guardian to the plaintiff.

The plaintiff then offered in evidence the three certificates of stock *cancelled* by erasure of the signatures of the mayor and register thereto. These certificates thus cancelled were produced at the trial by defendants upon notice served upon them by plaintiff, and were in the name of Norman, the plaintiff, redeemable at pleasure after the 1st of July 1867, 1870, and 1890, with interest at six per cent., payable quarterly, transferable only at the mayor's office in person or by attorney, and delivery of the certificate at the time to the trans-

ferree. Upon the back of each was this endorsement, dated November 1st, 1844: "Transfer to the Saving's Bank of Baltimore." Signed, "*Samuel Jones, Jr.*, guardian." He then proved that said stock was transferred on the books of defendants by the issue in the same form of like certificates to the Saving's Bank of Baltimore. Upon this proof the plaintiff asked two instructions, in substance as follows:

1st. If the jury believe that Norman, the plaintiff, was, on the 1st of November 1844, owner of the stock sued for, and that it stood upon the books of the defendants in his name, and that on that day defendants received of Jones, the guardian of said Norman, said certificates, cancelled the same, and issued others of the same amounts in place thereof to the Savings Bank, and have since refused to deliver to plaintiff or his guardian any stock, or pay any dividends thereon, then plaintiff is entitled to recover the value of said stock and interest thereon from the time of such cancellation.

2nd. If the jury believe from the evidence that the certificates, for the conversion of which this action is brought, were the property of Norman, an infant, and that the city of Baltimore, since the month of March 1844, obtained possession of the same by delivery from Jones, guardian of said infant, and cancelled them without an order from the orphans court authorising and directing said Jones so to deliver them to said city to be cancelled by it, and has since refused to pay him or his guardian the principal or dividends of said stock, then plaintiff is entitled to recover whatever the jury shall find said stock would have brought in the market at the time it was delivered up to be cancelled, with legal interest thereon since the time of such delivery and cancellation.

The court, (FRICK, C. J., and LE GRAND, A. J.,) granted both prayers, and to this ruling defendants excepted. The verdict rendered on the 12th of May 1851, was in favor of the plaintiff for $9186.14, with interest from that day, and costs. The *par value* of the stock in question, as appeared upon the face of the certificates, was $6299.99. From the

judgment rendered in accordance with this verdict the defendants appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Benjamin C. Presstman* and *John Nelson* for the appellants.

The second prayer is defective, because it instructs the jury that the plaintiff is entitled to recover the *market value* of the stock, with interest, whilst there was no evidence in the cause of such value. No objection is more fatal to an instruction than that there is no evidence to support it. It is evident the jury based their verdict upon mere speculation. *2 Md. Rep.*, 217. We were not bound to ask for a new trial, because we complain of the verdict as the *result of this instruction.*

There has been no such tortious conversion as will dispense with demand and refusal. The city authorities obtained peaceable possession of the stock, for it was placed in their hands by the party having the custody of it. The cancellation was by mistake and did not affect the rights of the parties, for they could have maintained *assumpsit* for the dividends as they arose. *Angel and Ames on Corporations*, 631, 646.

But assuming the conversion was the action properly brought? By the statutes of *West*, 13 *Edw.*, 1, *ch.* 49, and *West*, 2, 13 *Edw.*, 1 *ch.* 15, an infant may sue by *prochein ami* in cases where he can sue at all, as for instance in *assumpsit* for the dividends, because the debt was due to him, but where trover is brought the right to the immediate possession of the thing sought to be recovered must be in the plaintiff. *2 Greenleaf on Ev.*, secs. 636, 640. The infant was not entitled to such possession, and the delivery of the stock by him to the city would have been a conversion as against the guardian. A *cestui que trust* cannot maintain trover, because the right of possession is in the trustee. All the authorities maintain that the plaintiff in trover must have the right of property *and the right of possession.* See 7 *Term*

*Rep.,* 9. 1 *Chitty's Pl.,* 148. 7 *Dowling and Ryland,* 407. 4 *Barn. and Cres.,* 941. 12 *Eng. C. L. Rep.,* 272. 21 *Eng. C. L. Rep.,* 390. *Leigh's Nisi Prius,* 1466, 1468. The only case seemingly in conflict with these is that in 2 *H. & J.,* 347, but in that case there was at the time the suit was brought no guardian appointed by law. The judgment of the court was there founded upon the fact that the *hiring* by the mother was tortious; that she had no right to deal with the property as she did, and the infants having no guardian necessarily had the right to sue.

*Richard T. Merrick* for the appellee.

The argument on the other side admits the liability of the city, and rests the defence solely upon *technical* grounds, and that, too, the *infancy* of the plaintiff, which should be his protection. The stock stood in the name of the infant, and the certificates were given up to the obligors and *cancelled by them,* and others issued to the bank, for which they have received a valuable consideration. The act of 1843, ch. 304, requires an order of the orphans court before a transfer could be made. The case of *Albert and wife, vs. Savings Bank,* 2 *Md. Rep.,* 168, adopts the opinion of *Chief Justice Taney,* in *Maria Lowrey's case,* to the effect that the act of 1843, is notice to the corporation, and binds it to require the order thereby provided for. The liability of the city is therefore clear and indisputable, the transfer having been made by a party signing *as guardian* without the order required by the act.

In an action of *trover* the *conversion* is complete. 1st. where the party acquires possession of the property *tortiously;* 2nd. where he has exercised unauthorised acts of ownership over it; and 3rd, where he refuses to deliver after demand made. Either of these constitutes a conversion and the presence of either of the *first two* renders the third unnecessary. 1 *Chitty's Pl.,* 153, 166. Here there was an exercise of unauthorised dominion over the property. Suppose the certificates had been *burned* by the defendants, would there have been any necessity

for a demand? 9 *Gill*, 7. The fact of *conversion* is a question of law, the jury must find the facts that constitute the conversion, and if the prayer had left to the jury the finding of the conversion it would have been defective.

But it is said the infant has not the right of *immediate* possession. The bonds stood in his name, he was the owner of them. The guardian is not the *owner* of the legal title to his ward's property; he is merely the *custodiary* of it—the mere officer of the orphans court, which at best alone has the power to transfer and dispose of it. The policy of the act of 1843 is to let the property of the infant remain in his name. The possession of the guardian is but the possession of the ward at last. Now the question is, has the ward the right to sue by *prochein ami* ? The guardian could not sue for himself, he would have to sue *as guardian*. But since the statutes of *Westminster*, 1 *and* 2, the uniform practice has been for an infant to sue by *prochein ami*, and defend by guardian. 1 *Coke Lit.*, 135, (*b*,) note 226. 2 *Saunder's Rep.*, 117, (*f*,) note 1. *Chitt. Pl.*, 284. *Edwards on Parties*, 195. Demand and refusal are not necessary where there is a tortious conversion as in this case, and it is therefore immaterial whether the party upon the record was competent to make the demand or not. 3 *Pick.*, 218. 11 *Verm.*, 273. Though an infant has a guardian he may still sue by *prochein ami*. 3 *Blackf*, 228. 11 *Alabama Rep.*, 343. But the Court of Appeals of this State, has decided that an infant may sue in *trover* by *prochein ami* in the case of *Hay vs. Conner*, 2 *H. &amp; J.*, 347. It is said the infants in that case had no legal guardian, but they had a *natural guardian*, and such guardian must refuse to come in upon summons before the orphans court will appoint one. 3 *G. & J*, 112. 5 *H. & J.*, 110. Again, where a party holds funds in two capacities, he will be adjudged to hold them in that capacity in which he *ought* to hold them, (2 *G. & J.*, 225, 226. 2 *Md. Rep.*, 199,) and hence in this case the party will hold the money if recovered *as guardian* and not as *prochein ami*, and payment to him will therefore protect the city.

It is said the prayer is defective because there is no evidence of what the *market value* of the stock was. The certificates themselves were evidence of value, from which the jury could infer what value they chose, and if they rendered excessive damages the defendants should have moved for a new trial. The measure of damages is the value of the property converted. (*Sedgwick*, 512, 517,) and *prima facie*, the certificates would have brought what they purport to be worth on their face.

MASON, J., delivered the opinion of this court.

At the time the transfer or cancellation of the stock or obligations in question took place, the act of 1843, chap. 304, was in full force. By that act it is provided that, "it shall not be lawful for any guardian, to sell any property of his ward, without an order of the orphans court, authorising such sale or removal, and any sale made without an order of court shall be void, and no title shall pass thereby to the purchaser." No order was passed authorising the sale or transfer in the present instance, and consequently it was void, and the rights of the plaintiff were not affected by the transaction ; this court regarding it as a *sale or removal* within the meaning of the act.

The remaining question then for us to determine is, can the plaintiff under the present proceeding, remedy the evils which have resulted from the illegal act of his guardian of which he complains ?

The record discloses the facts, that at the time this suit, (which is an action of trover,) was instituted, the plaintiff was an infant, under twenty-one years of age, and that Daniel Sprigg, Esq., was his guardian, duly appointed and qualified as such ; and we are therefore asked to decide whether, under such circumstances, the guardian and not the infant was not the proper party to sue in the present action.

As a general rule we concede, that in order to support the action of trover, the plaintiff must show, not only that he had at the time of the conversion, a property in the chattel either

general or special, but that also at the time of the conversion, he had the *actual possession*, or the right to *immediate possession.* 1 *Chit. Plead.*, 148, (*11th Amer. Ed.*)

Under the statute of *West.*, 1, 3 *Edw.*, 1, *chap.* 49, and *West.*, 2, 13 *Edw.*, 1, *chap.* 15, an infant can sue by *prochein ami* in all cases where his rights have been invaded, and the only ground for questioning the right in the present case, is based upon the hypothesis that the possession of the chattel in dispute, which is the gist of the right to sue in trover, belongs exclusively to the guardian and not to the infant. In this view of the case we do not concur. For the purpose of sustaining the action of trover, we regard the *right of possession* as common to both the guardian and infant, the right in the first instance, resulting from the special property in the chattel by virtue of the guardianship, and in the second from the general and absolute property in the real owner. The possession, or right of possession in the one, is the right of possession of the other, as against third parties or strangers. In the case of a general as well as a special property to the same chattel in different persons, the action of trover may in most cases, be brought either by the general or special owner, but a judgment obtained by one, is a bar to an action by the other. 7 *Cowen*, 328, *Smith vs. James.*

In this State in the case of *Hay vs. Conner*, 2 *Har. & Johns.*, 347, the right of an infant to sue in trover, has been directly recognized by our Court of Appeals. It is true the particular point does not appear distinctly to have been raised in the argument, though expressly decided, nor does it appear in that case, that the infant had a guardian duly appointed under the act of 1798. It is to be presumed that if a valid objection did exist to the right of the infant to sue in that case, that it would have been discovered and pressed in argument by the counsel, and would have been considered in the learned opinion delivered by the court below. Nor do we think it a material circumstance in the case, that there was no guardian in existence appointed under our act of Assembly. The mother, *the natural guardian*, was before the court, who in the absence

of a statutory guardian, would have been invested with as full power to sue in such case as the other, and if the right had been exclusive in the former, it would also have been so in the latter. *Fridge vs. The State*, 3 *Gill & Johns.*, 103.

While we have not been able to find a case in all respects in point to the present question, we have nevertheless discovered, in other States, a number like the case of *Hay vs. Conner*, where an infant has sued both in trover and replevin, although it is true, in those cases the fact was not disclosed whether there was a statutory guardian or not. In the case in 11 *Vermont Rep.*, 273, the right of the infant to sue, in assumpsit, for a legacy, was established, although there was a regular guardian in existence at the time.

The foregoing question, though not directly raised by the prayers offered below, is nevertheless presented by the pleadings and proof, and has been pressed upon us in argument, and as it strikes at the very root of the plaintiff's case we have thought proper to dispose of it.

If this were a case where *demand and refusal* were necessary to support the present action, the plaintiff's first prayer would clearly have been incorrect, because it requires the jury to find a *refusal*, and of necessity a previous *demand*, when in fact there is not the slightest evidence in the record to show that there had been either. But, as we shall presently show, as this was not a case requiring demand and refusal, the objection mentioned above would not be regarded as a legitimate ground upon which to reverse the judgment below, because the question submitted to the jury, whether proved or not, was wholly immaterial: and in submitting that question to the jury the plaintiff rather prejudiced his own case than that of the defendant, and therefore the latter has no just ground to complain. We have no hesitation, however, in saying, that *demand and refusal* were not essential to the plaintiff's case, and therefore that question, in strictness, ought not to have been submitted to the jury in any form.

We have already said, the sale or cancellation of the plaintiff's stock or bonds, by Jones, his former guardian, and the

defendants, was void, and that, under the act of 1843, no title passed thereby. Whether or not the defendants acted ignorantly and innocently in this transaction, does not vary the case or excuse them in law. In legal contemplation all persons are presumed to know the existence and nature of our public statutes, and are held responsible for their violation. This being true, we cannot regard the conduct of the city council, in destroying the obligations or bonds in question, under the circumstances, in any other light than as a tortious conversion of the plaintiff's property, which dispenses with the necessity of a demand and refusal before suit.

The granting of the appellee's second prayer by the county court was erroneous. There being no evidence adduced at the trial below as to the *market value* of the bonds or stock in dispute, it was clearly improper for the court to have submitted to the jury *to find what said certificates or bills obligatory would have brought in the market at the time they were delivered up to be cancelled.*

The only evidence before the jury as to the *value* of the bonds, was the bonds themselves. From them clearly no legal inference could be drawn with reference to their *market value.* They proved, it is true, their *par value,* but the par value of a public or private security is no index of its market value, and the very circumstance of having asked the jury to find the market value was conclusive that it varied from the par value.

It is clear to our minds that the conclusions of the jury upon that subject, must of necessity have been based upon mere speculations, and not upon proof properly in the cause, and was therefore manifestly erroneous. *Insurance Company vs. Wilson,* 2 *Maryland Rep.,* 217.

For the defects contained in the appellee's second prayer which we have pointed out, we shall reverse the judgment of the court below.

*Judgment reversed and procedendo awarded.*