# THE BALTIMORE AND POTOMAC RAILROAD COMPANY

*v.*

# TAYLOR.

INFANTS, SUITS BY; PARTIES TO ACTIONS.

1. An action for damages for the diminution of the rental value of real estate, the title of which is in infants, is properly brought in the name of the infants by their next friend or guardian, and not by the guardian in his own name.
2. Where dower has not been specifically assigned, the widow of the former owner and mother of the children would be an improper party to such an action.
3. A railroad company is liable in damages for injury to the rental value of city real estate caused by the unlawful use of adjacent streets.

No. 426.   Submitted April 11, 1895.   Decided May 7, 1895.

HEARING on an appeal by the defendant from a judgment on verdict in an action for damages to the rental value of real estate. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit to recover damages for injury to the rental value of certain real estate in square 268, in the city of Washington, alleged to have resulted from the unlawful occupation of the adjacent streets by the appellant.

The facts of the case, so far as a statement of them seems to be necessary to a proper understanding of the legal questions involved, are these: In 1871, one John H. Taylor was the owner of the property in question, which was situated at the corner of 13½ street and Maryland avenue, southwest. Taylor died in that year, leaving a will, whereby he devised the property to his son, Hunter Taylor, for life,

and upon his death to his children, and in the event of his death without child or children, to his legal heirs. Hunter Taylor entered into possession of the property, and died in 1875 intestate, and leaving surviving him a widow, Anna W. Taylor, and two children, John H. Taylor and George H. Taylor, aged at the time four years and fifteen months respectively. The widow, Anna W. Taylor, was, in the same year 1875, duly appointed guardian to the two children, and as such she entered upon the possession of the property; and, either directly or by her agents, received the rents therefor up to the year 1892, when the property was acquired by the appellant company under condemnation proceedings. She remarried, becoming Anna W. Mackey, in 1880.

In the year 1874 or 1875, the Baltimore and Potomac Railroad Company, the defendant below and appellant here, constructed from its main track on Maryland avenue a side track partly on Maryland avenue and across 13½ street into a lot which it owned in square 267, on the west side of 13½ street, and which it used as a freight yard. This side track was located within one and a half feet of the curb stone in front of the property in question; and was thereafter maintained and used, and is yet maintained and used, by the company for the purpose for which it was constructed. The location of this side track and the use of it by the company are claimed to have been without warrant of law, and by the noise, soot, cinders, and other consequences engendered thereby, it is claimed that the property was greatly injured in its rental value; that access to it was made difficult and dangerous, and that in consequence of this it was left vacant and unoccupied for a time. The details of the alleged nuisance it is unnecessary to state.

This suit was instituted on July 31, 1890, in the name of the two minor children, John H. Taylor and George H. Taylor, and on their behalf, by their next friend, George Neitzey, to recover damages for the diminution of rental

value thus occasioned to the property, and the claim for damages extended over the whole fifteen years of the alleged unlawful occupation by the railroad company. There was a verdict for the plaintiffs and thereupon judgment; from which the railroad company has appealed.

*Mr. Enoch Totten* for the appellant :

1. The court erred in refusing to instruct the jury, at the close of all the testimony, to render a verdict in favor of the defendant. The declaration in this case is for an injury to the possession or use of the real property of the plaintiffs, of which, as it is alleged, they were at the time of the acts complained of "lawfully seized and *possessed*." The third plea of the defendant denies this allegation specially and the proofs of the plaintiffs distinctly show that they were never in possession, but that their statutory guardian from the death of Hunter Taylor until the institution of this action, was in the actual possession and control of the property, and that she collected the rents thereof. The plaintiffs were infants of tender years, and could not have been in actual possession of the property, either in law or fact. The rents alone were in controversy. No injury was alleged as to the inheritance. The widow and guardian was in exclusive possession, either as statutory guardian or as both widow and guardian. Suppose the defendant had made a settlement, for these alleged damages and loss of rents, with the two infants, and had taken their release, would the guardian have been estopped thereby to sue for and to collect the same damages, notwithstanding such settlement? An infant cannot make a contract and cannot make a valid release. Not so with a statutory guardian in possession of realty. Her release or discharge for such rents would have been binding on the infants and all other persons.

For intermeddling with the issues and profits of real estate belonging to infants, an action will not lie in their

names ; the suit must be brought in the name of the guardian *in socage* or *general guardian*, appointed by the surrogate. *Beecher* v. *Crouse*, 19 Wend. 306 ; *Truss* v. *Old*, 6 Rand. 556 ; *Bacon* v. *Taylor*, Kirby (Conn.), 368. A guardian may bring ejectment and trespass, may sue for rent, and he may lease the property, &c. Brown on Duties of Guardians, 99. A father or natural guardian of an infant may maintain replevin for their personal property. *Smith* v. *Williamson*, 1 H. & J. 147. This is so under R. S. D. C. hereinafter mentioned.

Upon the death of Hunter Taylor, the estate passed, by inheritance and not by devise, to his two sons, who were his only heirs. The widow thereupon became entitled to her dower and also to her " quarantine," or forty days' residence or possession, to allow time for the assignment of her dower. Act of 9 Henry III, c. 7, sec. 1 ; Comp. Stat. D. C. p. 36, sec. 164. A few days after the expiration of that time she was duly appointed and qualified as statutory guardian of the children, and began and continued to collect all the rents of this property. She was entitled to take one-third of these rents, after paying and deducting one-third of the expenses, as her dower. *Chase* v. *Chase*, 1 Bland, 206, 232. It was, of course, needless for her to have any formal " assignment of dower," as the rents were all in her hands, and she had the right to retain her one-third of them.

Under the provisions of the acts of Md. of 1729, ch. 24, sec. 7, and of 1798, ch. 101, sub-ch. 12, sec. 6, and secs. 937–939, 952 and 651, R. S. D. C., the guardian, and not the infant, has control of the real property of the infant, and must bring all actions at law for encroachments upon the possession or injuries to the occupation thereof. It will be kept in mind that the injury complained of here is an injury to the possession, *i. e.*, for a diminution of the rental value or loss of the income. The same identical right of action, for the same alleged injuries, ought not to exist simultaneously in the guardian and the wards ; otherwise the

defendant might have to respond to two suits simultaneously, and pay the damages twice.

If suits such as this one can be maintained successfully, then the statute of limitations falls far short of its purpose as a protection to a defendant. He may go on with perfect innocence and good faith for a long series of years, during the minority of his neighbor, using his own property, as he supposes, in the most careful and prudent manner, only to find out, after a ruinous penalty has accrued, that he has been maintaining a nuisance. It will hardly be denied that an action might have been maintained by the guardian at any time after the siding was laid, not only for the injury which may have accrued to the possession in behalf of the children, but for her own losses, if any, to her dower interest, nor can it be successfully denied that if she had so sued, the plea of the statute of limitations would have been a bar to all damages accruing prior to the three years next preceding the commencement of the action. In this case there was a person in possession (the widow and guardian), who could have maintained an action at any time after the alleged construction and use of the side track, and it seems to be only according to the manifest spirit of the statute of limitations that its operation ought to be admitted. For this reason it was pleaded, but the trial judge refused to apply or give it effect; this is only another argument that this action by the plaintiffs is not maintainable, either according to any system of law, or according to justice and equality to parties.

2. This siding was a lawful structure. It seems to be well settled that when a railroad company is authorized to occupy the street of a city for its road, it possesses the right, as a necessary incident, to make a " turn-out " within the limits of a street to communicate with its depot (*Railroad v. Municipality*, 1 La. Ann. 128), and authority to construct a railroad includes, *ex vi termini*, such additional sidings and branches to their depots, wharves, &c., as are made necessary by increase of business. Power to con-

struct and maintain a railroad necessarily includes power to build depots, stations, side tracks, engine houses, switches, repair shops, &c. *Bridge Co.* v. *Railroud Co.,* 17 Conn. 454 ; *Black* v. *Railroad Co.,* 58 Pa. St. 249 ; *Turnpike Co.* v. *Railroad Co.,* 2 Harr., N. J. 314 ; *Duncan* v. *Railroad Co.,* 94 Pa. St. 435 ; *Lake Sup. Railroad Co.* v. *United States,* 93 U. S. 453 ; *Cathron* v. *Railroad Co.,* 2 Phil. 469 (Eng. Ch.); *Railroad Co.* v. *Williams,* 54 Pa. St. 103 ; *Com.* v. *Haverhill,* 7 Allen, 523 ; *Railroad* v. *Daniels,* 16 Ohio St. 390 ; *Railroad* v. *Kip,* 46 N. Y. 546 ; *Protzman* v. *Railroad Co.,* 9 Ind. 469 ; *Speer* v. *Railroad Co.,* 56 Pa. St. 325 ; *Township* v. *Strong,* 96 U. S. 276.

3. The court erred in excluding from the consideration of the jury the condemnation proceedings by means of which this company acquired the property in dispute. The defendant had a right to argue to the jury that even if it had inflicted an injury as to the occupation of the property, it had made amends in whole or in part by buying the property through the provisions of law (the only way it could buy it from *infants*), and that it had paid a fair, a high, or an extravagant price for it. It had a right to present these arguments to the jury in mitigation of damages for whatsoever they were worth in the estimation of the jury.

4. The plaintiffs were not entitled to recover for all the rents lost, if any, but only for two-thirds thereof. Suppose such alleged lost rents had been actually collected, what would have been the legal distribution of them ? The guardian, as widow, would have been entitled to retain one-third as her dower ; and only the remaining two-thirds, after deducting her commissions as guardian, would have belonged to the infant plaintiffs. It does not appear that the guardian ever rendered any accounts to show how she applied the rents which she did collect. It is most probable that she never actually apportioned any of them to the minors, but treated the money as a fund for the support of herself and incidentally of her family.

5. The most that could have been properly recovered on

this declaration was the amount of the rents for the period of twelve months. The jury should have been told that they could not find, from the evidence, that the property was unrented for a period of more than *five* months, the period for which plaintiffs' own evidence shows that the property was vacant.

*Mr. A. S. Worthington* and *Mr. W. Preston Williamson* for the appellees :

1. The widow's supposed dower rights are not involved here. That portion of John Taylor's will quoted by the appellant in his brief provided that the property at the corner of 13½ street and Maryland avenue should go to Hunter Taylor for life and at his death to his children, and then, in default of children, to his legal heirs. The word children has nothing following it which manifests the intention that it should be equivalent to "heirs," or "heirs of the body;" and unless such qualification appears, the rule in Shelly's case is not applicable. The word "children" must be taken in its technical and primary sense, and as such is not the equivalent of the word "heirs." This principle is well illustrated in the following cases : *Stump* v. *Jordan*, 54 Md. 619 ; *Ridgway* v. *Lamphear*, 99 Ind. 251 ; *Bannister* v. *Bull*, 16 So. Car. 221 ; *Donnelly* v. *Turner*, 60 Md. 81 ; *De Vaughn* v. *De Vaughn*, 3 App. D. C. 50.

The limitation to the heirs in this will is entirely contingent upon the fact of Hunter Taylor dying *without children*. As he left children, the limitation over to the heirs falls. Further, as the word *heirs* is expressed in the contingent remainder, it clearly shows that the word *children* means simply *children* and not heir or heirs of the body. The rule in Shelly's case is a rule of law and not of intention, and must be governed by the technical meaning of the word children.

The widow made no claim to an interest in the property, and the railroad company cannot force her into a contro-

versy with her children.    The record in this case shows
when she filed her petition to be appointed guardian of
these children she averred this property and the rents thereof
to be theirs.

2. The plaintiffs below were the proper persons to sue in
this action.    At the trial below, counsel for the defendant
in his argument in support of a prayer for an instruction
that the jury render a verdict in favor of the defendant
brought to the attention of the court the fact that in his
opinion the guardian was the only person who had the right
to appear as plaintiff.    This point should have been pleaded
either in abatement or as a special plea in bar, and the
court below held, and properly, we think, that it was waived
by the plea of the general issue filed by the defendant.
This objection is in substance that the infant plaintiffs, *be-
cause they are infants*, must have some one to represent
them, and as the guardian has a sort of possession of their
real property, such guardian is the one to bring the action.
It will be seen that this is an attack upon the capacity of
the plaintiffs to sue, and goes to the disability of the per-
son of the plaintiff.    The Supreme Court of the United
States, in the following cases, has held that a plea of the
general issue in a case admits the capacity of the plaintiffs
in that case to sue:    *Society, &c.* v. *Pawlet*, 4 Pet. 480 ;
*Railroad* v. *Quigley*, 21 How. 202 ; *Conrad* v. *Insurance
Co.*, 1 Pet. 386, 450.    And it is a well-settled principle of
law, that pleas to the disability of the person of the plain-
tiff, which are a division of pleas in abatement, are waived
by pleading the general issue or in bar.    1 Chitty on Plead-
ing, 448.    Instead of pleading in abatement or in bar the
supposed disability of the plaintiffs, the defendant in this
case interposed a plea of the statute of limitations, and
when it was replied to this that the plaintiffs were both in-
fants, the rejoinder was not that their guardian was in pos-
session and was of age, but *that the averment of infancy
was not true.*    This being the only issue in the case as to
the application of the statute of limitations, the defendant

had no right to seek to raise another question—that this statute was not a bar because the guardian could have sued. But the guardian could not sue for the damages claimed in this action.

In Maryland it has been held that where the right of possession of personal property of an infant is the gist of the action, the suit may be brought either by next friend or by guardian ; but in either case the suit should be in the name of the infant. Alex. Brit. Stat., 121–123, citing *Mayor* v. *Norman,* 4 Md. 352 ; *Hay* v. *Conner,* 2 H. & J. 347.

This seems to have been the established practice in England.   2 Wms. Saunders, 5 ed., 117 (f).   And see *Deford* v. *Keyser,* 30 Md. 179.

In the United States generally the rule seems to be all but universal that unless express statutory authority be given the guardian to sue in his own name, the suit, whether at law or in equity, must be in his ward's name in all cases where the ward is the real party in interest. *Fox* v. *Minor,* 32 Cal. 112 ; *Stafford* v. *Roof,* 9 Cowen, 626 ; *Bradley* v. *Amidon,* 10 Paige, 239 ; *Thomas* v. *Dike,* 11 Vt. 273 ; *Longstreet* v. *Filton,* 1 Coxe (N. J. Law) 38 ; *Dowd* v. *Wadsworth,* 2 Dev. (N. C. Law) 130 ; *Jennings* v. *Collins,* 99 Mass. 29 ; *Hoare* v. *Harris,* 11 Ill. 24 ; *Riggs* v. *Zaleski,* 44 Conn. 121 ; *Hutchins* v. *Johnson,* 12 Conn. 376 ; *Anderson* v. *Watson,* 3 Met. (Ky.) 509 ; *Barnet* v. *Commonwealth,* 4 J. J. Marsh. 389 ; *McChord* v. *Fisher's Heirs,* 13 B. Mon. 194 ; *Robson* v. *Osborn,* 13 Tex. 305 ; *French* v. *Marshall,* 136 Mass. 566.

4.   The siding was not lawful.   On this point all that is necessary is a reference to the cases of *District of Columbia* v. *Railroad Co.,* 114 U. S. 453, and *Fifth Baptist Church* v. *Railroad Co.,* 108 U. S. 331.

5.   Evidence of the condemnation proceedings was properly excluded.

Mr. Justice MORRIS delivered the opinion of the Court:

There seem to be five questions raised by the appellant: 1st. That the suit should have been instituted by and in the name of the guardian, and not in the name of the children themselves, by their next friend; 2nd. That the side track complained of was a lawful structure, and that the use of it was lawful, and therefore no recovery could be had; 3d. That the widow, Anna W. Taylor, had a right of dower in the injured property, and the plaintiffs therefore were not entitled to recover for more than two-thirds of the rental value; 4th. That the plaintiffs, under their declaration, were not entitled to recover for more than twelve months, and under their proof, for more than five months; 5th. That the defendant should have been allowed to introduce in evidence the record of the condemnation proceedings under which the company acquired the property in 1892. Only two of these, the first and second, are strenuously insisted on by the appellant.

1. At first sight, at least, it seems to be a rather novel and startling proposition of law that any person, who has both the legal title to property and its beneficial ownership, should not be entitled to bring suit for injury to the usufruct of it. It is not contended that minors may not, by next friend, institute suit in ejectment for the recovery of real estate, or any other suit proper or necessary to preserve the property or to insure its usefulness. The claim is, that as a guardian is entitled to take possession of real estate and collect the rents and profits for the benefit of his ward, and is given by law the right of control and management of it, as well as the right to execute leases, releases, receipts and acquittances, therefore he, and not the ward, is the proper person to bring suit for the recovery of rent, and for injury to the rental value. The motive for this contention, the appellant does not hesitate to avow, consists in the fact that the statute of limitations may be available against a guardian, as claimed by counsel, while it is unavailable against minors.

Originally at the common law a minor could not maintain any suit ; for he was disqualified by his minority from binding himself by any legal act. But it was very early settled that he could sue by guardian ; and the statute of 13 Edward I made him competent to sue by next friend. Since that statute there never has been any question as to the right of a minor to sue, either by guardian or by next friend, as the case may be, in any matter whatever in which suit might be maintained by an adult. And it is quite clear that in this is included the right to sue for diminution of the rental value of his own property, unless there has been some statute by which that right has been denied to him and his guardian has been substituted in his place. We fail to find any such statute.

The rights of guardians in this regard should not be confounded with those of executors or administrators, or, in some cases, trustees and receivers. These have a legal title in them, and as to all the world except their beneficiaries, the right of absolute ownership. There is neither legal title nor ownership of any kind in guardians. What they do, they do in the name of their wards, on their behalf, and for their sole and exclusive benefit. A case has been cited, *Smith* v. *Williamson*, 1 H. & J. 147, in which a father, as the natural guardian of his minor child, was held entitled to maintain replevin. But any person may maintain replevin and trover who has a present right of possession ; and undoubtedly a guardian has the right of possession of the personal property of his ward. A guardian is no more than a custodian. He is a custodian both of real and of personal property, as well as of the person of the minor. As the custodian of personal property, he may, in his own name, bring any suit that has reference merely to the question of custody or possession. But neither in reference to personal property nor in reference to real estate should he bring suit in his own name, where the question of right or title is involved ; for he has neither right nor title in the premises. The right and title are in the ward ; and it is

proper always and in all cases to bring suit in the name of the ward.   Guardianship in *socage* has never existed in the District of Columbia, and cannot exist under our law to direct descents ; and whatever may have been the rights of a guardian in. *socage*, a general guardian appointed under statute cannot possess them, unless they are given by the statute.   As we have said, we find no provision in any statute law in existence in the District of Columbia that either expressly or by necessary inference gives a guardian the authority to sue in his own name for injuries to the rights of his ward.   A certain specific power to sue in a certain case (Act of Maryland of 1729, chap. 24, sec. 7), or the power to execute conveyances of the ward's estate in certain specified cases (Rev. Stat. for D. C., sec. 651), cannot be construed to give general and unlimited authority to bring suit.   The inference would rather be to the contrary.

We have no doubt that, except in some particular cases, such as those to which we have just referred, the rule is universal in the United States, that suits with respect to the property of a ward, where recovery is sought for his bene-fit, must be in the name of the ward, and not in the name of his guardian, unless statutory authority is given to the latter to so institute the suit, and the only point as to which there may be doubt or controversy is whether the suit should purport to be by a guardian or by next friend.   It does not seem to us that it is of much consequence which way it is brought, as the court will have power to direct a change from the one to the other, as occasion may require, both being officers of court for the purpose of such suits. *French* v. *Marshall*, 136 Mass.  556 ; *Riggs* v. *Zaleski*, 44 Conn. 121 ; *Thomas* v. *Dike*, 11 Vt. 273 ; *Bradley* v. *Amidon*, 10 Paige, 239 ; *Stafford* v. *Roof*, 9 Cowen, 626 ; *Hoare* v. *Harris*, 11 Ill. 24 ; *Fox* v. *Minor*, 32 Cal. 112 ; *Deford* v. *Keyser*, 30 Md. 179 ; *Mayer* v. *Norman*, 4 Md. 352.   Three cases are cited to the contrary, two of which have apparently been overruled ; and the other is based on a special statute.

There is no danger, it seems to us, that the difficulty will arise, which is apprehended by counsel for the appellant, that, for the same cause of action, a defendant might have to respond to two suits, one by the guardian and the other by the ward. When there is a recovery in a suit instituted by or in the name of the true beneficiary, there is no danger that any court will permit another recovery in the name of a merely formal party, who has no real interest in himself. Nor is there any danger that the act of a guardian, performed within the sphere of his duties, will not be given its full and proper effect in any proceeding instituted by or in the name of the ward. The act of the guardian so performed is the act of the ward, and can be shown against the ward in any proper proceeding.

We are of opinion, therefore, that this suit was properly instituted in the name of the minor children who have been made the plaintiffs in it, and that it is not objectionable because instituted by next friend, instead of by guardian.

2. The appellant's second proposition is that the side track complained of is, or was, a lawful structure, and that it was lawful for the appellant to maintain and use it, and that for such maintenance and use the plaintiffs are not entitled to recover damages. In view of the explicit decisions of the Supreme Court of the United States in the cases of the *District of Columbia* v. *Baltimore and Potomac Railroad Co.*, 114 U. S. 453, and *Fifth Baptist Church* v. *Baltimore and Potomac Railroad Co.*, 108 U. S. 331, where this precise question was expressly involved, and decided adversely to the contention of the appellant, we cannot suppose that the question is now open for discussion.

3. The third proposition advanced by the appellant is that the plaintiffs at the utmost are not entitled to recover for more than two-thirds of the rental value of the property, inasmuch as the widow, Anna W. Taylor, is entitled to the other third part, as it is claimed, in consequence of her supposed dower interest. We think this proposition likewise to be untenable.

Dower interest unassigned is a matter between the widow on the one side, and the heir, devisee or holder of the property on the other. Third parties have nothing to do with it. The widow cannot look to them, but to those entitled to the property, for the enforcement of her rights. When dower is assigned, the widow becomes the owner for life of the property assigned, and is, of course, entitled to sue in her own name and right in respect of the rents and profits of such property. But when dower has not been specifically assigned, and it is satisfied only through the receipt of a share of the rents and profits, that share must be received from or through the holders of the inheritance. The widow has no right at law to proceed for it directly against tenants. Nor is it proper that she should be joined as party with the heir or the holder of the inheritance in a suit at common law to recover rents or damages for impairment of rental value. 4 Kent's Com. 61.

Again: the contention of the appellant is, that in the present instance the widow is entitled to dower for the reason that Hunter Taylor, her deceased husband, received an estate in fee simple by the devise from his father, under the operation of the rule in Shelley's case. But there was no such dower interest created by the will or resulting from it. Assuming that, by the rule in Shelley's case, the limitation of the estate to the heirs of Hunter Taylor gave a fee simple to him, yet the limitation is of a contingent estate merely, to take effect and to become vested only in the event that he left no children; and, as he did leave children, the contingency never occurred and cannot now occur, and the estate can never vest. The estate is absolutely gone, and with it all possibility of a dower interest in his widow. Moreover, it could not be construed in any event to operate so as to cut out the intervening estate to the children.

4. The appellant's fourth proposition to the effect that the appellees are restricted by their declaration to a period of twelve months, and by their proof to five months out of

those twelve, as the time for which only they can recover, is based upon a misunderstanding of the plaintiff's declaration.   That declaration claims damages for a diminution of the rental value of the property for fifteen years; and among the items of loss is mentioned the fact that on one occasion, in consequence, as alleged, of the unlawful action of the appellant, the property remained wholly unoccupied for twelve months, shown by the proof, as it is said to have been only for five months.   But this plainly was alleged only as one item of damage, and not all for which claim was made.   The court below undoubtedly was right in declining so to limit the right of recovery.

5.  The appellant's fifth proposition, that it was error in the trial court to refuse to admit in evidence the record of the condemnation proceedings under which, in 1892, the appellant acquired the property in question, requires no consideration from us.   That record was plainly irrelevant under any theory of the law of evidence.

We find no error in the record of this cause ; and we are of opinion that the jndgment of the court below should be *affirmed, with costs.   And it is so ordered.*