# EASTERLING *v.* HORNING.

### GUARDIAN AND WARD; PLEDGE.

In this District, a pledge by a guardian of the personal property of his ward, without an order of the court, is void; and a pledgee for value and without notice takes no title as against the ward or a subsequently appointed guardian. (Construing sec. 165, D. C. Code, 31 Stat. at L. 1217, chap. 854, prescribing the course to be followed in the sale of an infant's estate; sec. 1135, D. C. Code, 31 Stat. at L. 1370, chap. 854, prohibiting the sale of an infant's estate by the guardian without an order of the court, and sec. 4, probate rule 21 of the lower court, providing that a guardian shall not dispose of or encumber the ward's estate without an order of the court.)

No. 1775.    Submitted December 13, 1907.    Decided January 6, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court, in an action of replevin.    *Reversed.*

The facts are stated in the opinion.

*Messrs. Wilson & Barksdale* for the appellant.

*Messrs. Tucker & Kenyon,* for the appellee:

1. A guardian at common law had the right to sell his ward's personal property without first obtaining an order of the court. *Maclay* v. *Equitable Life Assurance Society,* 152 U. S. 499.

The right to sell, of course, includes the lesser right to pledge, for the same reason that the right to mortgage is included in the right to sell. *Middleton* v. *Park,* 3 App. D. C. 149.

D. C. Code, sec. 1135, provides that "no guardian shall sell any property of his ward without an order of the court previously had therefor." But the statute does not prohibit a pledge by the guardian of his ward's property, nor does it even provide that a sale by a guardian is void. That this section of the Code was not intended to cover the case of a pledge by a guardian, or to make a sale by him void, and not merely voidable, is made plain by a reading of sec. 323, D. C. Code, relating to sales by executors or administrators. The latter section prohibits an executor or administrator from selling any property of his decedent without an order of the probate court, and then provides that "any such sale made without a previous order authorizing it *shall be void and pass no title to the purchaser.*" This section also further provides that "if any executor or administrator shall sell, *pledge,* or dispose of any property without such previous order, his letters may be revoked and an administrator appointed whose duty it shall be immediately to recover possession of said property."

Thus it will be observed that, while the statute certainly makes a sale, and perhaps makes a pledge, by an executor or administrator, without previous order of the court, absolutely void, even as against an innocent purchaser for value, it merely prohibits a guardian from making a sale, plainly indicating an intention to make such a sale voidable only. So that, if a guardian sells his ward's personal property and the sale results advantageously to the ward, the act, being a voidable one only, may be ratified by the ward or the court, which could not be done if the sale were void. If the sale results disadvantageously to the ward, then the guardian is responsible to him for his act. In other words, sec. 1135 is intended merely to fix the rights of the ward as against the guardian, and not to affect the rights of third persons dealing with the guardian.

"If the ward's property has passed, by the voidable act of the guardian, into the hands of third persons who have received it bona fide and on good consideration, the ward cannot reclaim it from them." 15 Am. & Eng. Enc. Law, 2d ed. pp.

83, 84. See also: *White* v. *Iselin,* 26 Minn. 487-491; *Melros* v. *Pabst Brew. Co.* 93 Wis. 153; *Gibson* v. *Gibson,* 102 Wis. 508, 509; *Thornton* v. *McGrath,* 1 Duv. (Ky.) 349; *Terrell* v. *Anchauer,* 14 Ohio St. 84; *Ellis* v. *Peck,* 45 Iowa, 112; *Van Shaack* v. *Robbins,* 36 Iowa, 201. "Executors, guardians and other fiduciary officers are permitted so wide a range of authority in the ordinary exercise of their trusts that one need not question their general power to pledge personal assets of the trust fund." Schouler, Bailments and Carriers, 3d ed. sec. 183, citing—*Earle Vane* v. *Rigden,* L. R. 5 Ch. 663; *Berry* v. *Gibbins,* L. R. 8 Ch. 747; *Ashton* v. *Atl. Bank,* 3 Allen, 217; *Rhine* v. *Lewis,* 13 Rich. Eq. 269; *Field* v. *Schieffelin,* 7 Johns. Ch. 150; *Petric* v. *Clark,* 11 Serg. & R. 377; *Gottberg* v. *Bank,* 131 N. Y. 595; 1 Story, Eq. 13th ed. p. 590. Modern tendency is to protect bona fide holders. Schouler, Bailments & Carriers, 3d ed. sec. 182.

2. Admitting that the appellee had notice that he was dealing with a guardian, there is not only no evidence that he had knowledge of any facts tending to show that the guardian was committing a fraudulent act, but there is no evidence whatever that the guardian did commit such an act. There is nothing to show that she appropriated the proceeds of the pledge to her own use, or in any way misapplied them. There is nothing to show that the proceeds, if they were not properly applied to the maintenance and support of the ward, are not among the effects of Mrs. Myers' estate. In short, there is nothing in this record to justify, legally or even equitably, the forcible taking of the jewelry by the writ of replevin from the appellee. *Field* v. *Schieffelin,* 7 Johns. Ch. 150, cited with approval by the Supreme Court of the United States in *Maclay* v. *Ins. Co.* 152 U. S. at p. 503. "A purchaser who deals with a guardian justly and fairly has a right to presume that the guardian acts for the benefit of the ward, and will take a good title unless he has notice of the guardian's fraud." 21 Cyc. Law & Yroc. p. 84, citing *Schmidt* v. *McBean,* 98 Ill. App. 431. "To charge a pledgee with notice of fraud in a fiduciary's title or an intended misapplication of funds, the facts

shown, whether direct or indirect, should be such as to put an ordinarily prudent person upon inquiry." Schouler, Bailments & Carriers, 3d ed. secs. 183, 184 A.

Mr. Justice BARNARD, of the Supreme Court of the District of Columbia, who sat with the Court, in the hearing of the case, in the place of Mr. Justice ROBB, delivered the opinion of the Court:

In this case the appellant, Edwin H. Easterling, filed a declaration in replevin in the supreme court of the District of Columbia, being number 48,754, to recover certain jewelry alleged to be the property of his ward, Beatrice Mae Lang, an infant.

The defendant, George D. Horning, pleaded "not guilty," and the case was tried before a jury; and at the close of the testimony the jury by direction of the court, returned a verdict for the defendant, on which verdict judgment was rendered. The plaintiff having obtained possession of the jewelry by the writ, the judgment provided that the plaintiff should return the property replevied, with costs, or, on failure, that the defendant should recover against the plaintiff and his surety $450, the value of the property as agreed upon by both parties.

From this judgment the plaintiff appeals.

It appears that the jewelry in question consisted of rings, watches, necklaces, pins, a cameo set, and a neck chain, which had previously belonged to the mother of the infant, Beatrice Mae Lang; that on the death of the mother these jewels were given by her will to the daughter, the will providing that the mother of the testatrix should keep the same for her until she, the infant legatee, became of age.

The record discloses that the grandmother took out letters of guardianship on the estate of her grand-daughter on the 20th of June, 1901, giving a bond in the penalty of $50; and took possession of said jewelry, with other property. That on February 3d, 1904, without any order of the probate court allowing her to do so, the said grandmother, either as guardian, or custo-

dian of the jewels, went to the place of business of the defendant, a pawnbroker, and pawned the said jewelry for a loan of $300, on which it was agreed that interest should be paid at the rate of 3 per cent per month, or fraction thereof, the pledgee agreeing to hold the said property for twelve months, or, in case of renewal, twelve months from the date on which interest shall be paid; if not renewed or redeemed, the goods were to be sold at the end of twelve months.

Beatrice Mae Lang was born May 8, 1891; her father died in the same year, and her mother remarried, and died on June 14, 1901; and she lived with her grandmother all her life up to the date of her grandmother's death, which occurred August 17, 1906.

Four errors are assigned upon this record:

First, that the court erred in holding that Mrs. Myers, under the terms of the will in question, held title to the jewelry as testamentary guardian; second, that it erred in holding that Mrs. Myers had a right as testamentary guardian to pawn the jewelry without an order of the probate court; third, that it erred in holding that the defendant's express or constructive notice of Mrs. Myers' trust was immaterial; and, fourth, that it erred in holding that there was no question of fact to be submitted to the jury.

The fourth error assigned is based upon the testimony, in the record, of the infant, Beatrice Mae Lang.

She stated that she went with her grandmother to the pawnshop of George D. Horning, on February 3d, 1904, when her grandmother pawned the articles of jewelry replevied in this suit. She says she heard her grandmother tell Horning, at the time the goods were pawned, that they were left to her (the witness) under the will of her mother, to be kept by her (the grandmother) until she (the witness) became of age; and that she (the grandmother) was the guardian of the witness.

This statement of the infant is contradicted by Mr. Horning in his testimony, but if the same was material it should have been submitted to the jury to be weighed by them, in connection with all the other evidence in the case.

If, however, the guardian had a right to pawn the jewelry without any order of the court, then it would be immaterial whether Horning was told that she was the guardian or not.

He admits that he was acquainted with the grandmother of Beatrice Mae Lang, and that she, the infant, came with her grandmother to his place of business; but he denies that he had any information as to the ownership of the jewelry, and claims to hold it as a bona fide pledgee for value, on a pledge made by Mrs. Myers in her own right.

If the title to the jewelry was vested in the infant, and the grandmother had taken the jewelry to the defendant, and pledged it without the knowledge of the owner and without any authority from the owner, could the defendant have taken title by the mere fact of possession by the grandmother, and pledging to him? Would not the maxim, *Caveat emptor,* apply to the defendant in that case equally with its application in a case of property that was stolen? If no right existed in the grandmother to part with the possession of the jewelry, how can the defendant maintain his position that he is a bona fide holder of the jewelry, for value, in the regular course of business, any more than he could if the grandmother had stolen the property and brought it to him?

It seems to us that the court should first determine what her authority was; and if it is decided that she had no power to sell or pledge the jewelry without an order of court first obtained, it would seem to follow that the pawnbroker should have inquired and found out whether she had such order or not, or that, if he did not do so, he would take the goods at his own peril.

Counsel for the appellee contend that a guardian at common law had the right to sell his ward's personal property without an order of the court. *Lamar* v. *Micou,* 112 U. S. 452, 28 L. ed. 751, 5 Sup. Ct. Rep. 221; *Maclay* v. *Equitable Life Assur. Soc.* 152 U. S. 499, 38 L. ed. 528, 14 Sup. Ct. Rep. 678, and a number of other authorities are cited to sustain this position.

Sec. 1135 of the Code of this District, however, provides that "no guardian shall sell any property of his ward without an

order of the court previously had therefor." [31 Stat. at L. 1370, chap. 854.]

It is argued that this section of the Code only makes a sale by a guardian without previous order of the court a voidable one, but that it is not absolutely void, and that, as between the ward and a third person to whom the guardian may have wrongfully sold the property, such sale would be absolute, if made for a good consideration, and the ward could not reclaim the property from such purchaser.

It is further contended that the prohibition against a sale of property does not include a prohibition against pawning it.

We are not prepared to concede this contention; and our attention has been called to a number of cases under similar statutes, where the courts have held a contrary doctrine.

Sec. 165 of our Code provides a method by which a sale of the property of an infant may be properly made, as follows:

"Wherever it shall appear, upon the petition of the infant by next friend, or of the guardian of an infant, and the appearance and answer of such infant by guardian to be appointed by the court, and proof by depositions of one or more disinterested witnesses, that a sale of the principal of the infant's estate, or of some part thereof, whether real or personal, is necessary for his maintenance or education, regard being had to his condition and prospects in life, the said court may decree such sale on such terms as to it may seem proper." 31 Stat. at L. 1217, chap. 854.

Some of the courts have held under a similar statute that the maxim, *Expressio unius est exclusio alterius,* applies; and that, where a provision of this kind is made, a sale attempted to be made in a contrary way will be held void. *De La Montagnie* v. *Union Ins. Co.* 42 Cal. 290; *Baltimore* v. *Norman,* 4 Md. 352; *Washabaugh* v. *Hall,* 4 S. D. 168, 56 N. W. 82; *Mack* v. *Brammer,* 28 Ohio St. 508; *Merritt* v. *Simpson,* 41 Ill. 391; *McDuffie* v. *McIntyre,* 11 S. C. 551, 32 Am. Rep. 500; 21 Cyc. Law & Proc. 85; Woerner, American Law of Guardianship, sec. 62.

In addition to these two sections of our Code, the one pro-

viding a method for the sale of the estate of an infant, and the other prohibiting the sale without first obtaining an order of the court, sec. 164 provides for mortgaging the real estate of an infant, and sec. 163 for leasing for a term of years the real estate; and by the 4th section of rule 21 of the probate rules of the supreme court of the District of Columbia, "guardians are not allowed to dispose of the ward's property or encumber it in any way without order of court." This rule has all the force and effect of law, so far as the guardian's power to pledge or mortgage the infant's estate is concerned; and we are inclined to hold that these statutes and rules, taken as a whole, render void any attempt by a guardian to pledge or otherwise dispose of the title to property which the law says is in the infant, in any other way than that provided therein. Jones, Pledges, secs. 53, 54.

If the property was so disposed of by the guardian, and the infant on reaching his majority should see fit to disregard the action of his guardian, he might treat the attempted sale as a nullity, and recover the property, if the same could be found and recovered; and it being the duty of the guardian of an infant to collect and take possession of and hold and preserve his estate, the plaintiff in this case as guardian would have a right on behalf of the infant to treat such a sale as void, and to exercise for the infant the right which the infant would have on arriving at the age of twenty-one years.

There is a difference in the authorities between the personal representative of a decedent, and the guardian of an infant, in this, that the personal representative of a decedent takes the title to the personal estate left by the decedent, while the title to the personal estate of an infant remains in the infant, and is not transferred to the guardian when one is appointed. Woerner, American Law of Guardianship, sec. 53.

It seems to the court in this case that there can be no question that the title to the jewelry was vested in the infant, as a specific bequest under her mother's will; and that while she was under guardianship it was the duty of the guardian to preserve and protect her estate, saving it for her use and main-

tenance, and not to dispose of any portion of it, unless authorized to do so by the court.

We further think that the probate court would never have authorized the guardian to pawn the jewelry in this case, for a loan bearing interest at 3 per cent per month.

If a proper application had been made to the court to sell the jewelry, and it was necessary to do so for the support of the infant, a sale might have been authorized; but a pledge and an agreement to pay 3 per cent per month interest would virtually amount to a disposition of the property beyond the recall of the guardian, and at the same time the contract of the defendant, as shown by the pawn ticket, was that he was not to be responsible for loss or damage of any of the goods by fire, robbery, or other casualty; and the arrangement was that, unless redeemed or renewed, the goods were to be sold at the end of twelve months.

This pawn ticket does not seem to have been signed by the guardian, consenting to such sale, but nevertheless she accepted the ticket from the defendant, and the same came into the hands of the plaintiff as the guardian succeeding her, and the evidence of the transaction comes into the record in that way.

The record further discloses that Mrs. Myers, the guardian, obtained the authority of the probate court, on petition, to mortgage certain real estate for a loan of money, so that it cannot be inferred that the jewelry pawned was the only estate which the infant had, and that it was necessary to obtain money by pawning the same in order to support the infant.

The order of the probate court permitted the said guardian to borrow $900 on the said real estate, on June 25, 1902; and she borrowed the $300 on this jewelry on February 3d, 1904; and there is nothing in the record showing the necessities of the infant at that time.

We need not consider the other assignments of error, for we are disposed to hold, on the whole case, that it was error to instruct the jury to return a verdict for the defendant, and for which error the judgment appealed from must be reversed.

We are further of the opinion that no title whatever passed

from the infant to the defendant by the pledge made by the guardian of the infant; and that, therefore, the instruction should have been that the jury return a verdict in favor of the plaintiff.

The judgment of the Supreme Court of the District of Columbia is therefore reversed, with costs, and the case is remanded to that court for a new trial and such further proceedings as may be consistent with this opinion.          *Reversed.*