(Decided November 25th 1864.)

GEORGE C. HUMES AND MAREEN D. HUMES, BY LEONARD J. MILLS, THEIR NEXT FRIEND *vs.* JOSEPH SHILLINGTON AND JOHN THOMAS BURCH, EXC'RS OF GEORGE HUMES.

ORPHANS' COURT: WILL—CAVEAT TO: NEXT FRIEND OF INFANT CAVEATORS MAY BECOME A COMPETENT WITNESS FOR THEM.—Pending proceedings in the Orphans' Court, upon *a caveat* of infant heirs by their next friend, to the probate of a paper writing purporting to be the last will of their deceased father; if at

Mills *vs.* Humes' Exc'rs.

any time before final hearing it appears that such next friend is a material witness for the infant caveators, he may, on application by petition, by being discharged, and the appointment by the Court of another in his place, and his giving security for costs, be made a competent witness;—and it is error in the Orphans' Court to refuse such application.

——: ——: PLENARY PROCEEDINGS.—At any stage of such proceedings, before final adjudication, either party may demand an answer under oath, and that the proceedings be made *plenary*, and the Orphans' Court is not at liberty to refuse such demand.

——: ——: ORPHANS' COURT,—ISSUES FROM.—It is error in the Orphans' Court to refuse and dismiss the petition of caveators to the probate of an alleged will, praying that issues may be framed and sent to the Circuit Court for trial, and assigning a substantial reason for the granting of the prayer of the petition, viz: That the caveators "have material testimony to offer effecting the probating of the paper writing, and that some of the witnesses, who are competent, and whose evidence is material to the controversy, reside beyond the jurisdiction of the Court," &c.

——: ——: ESTOPPEL: CODE, ART. 93, SEC. 251.—And such caveators by temporarily submitting to the interlocutory orders of the Court, do not debar themselves from any rights they may have, especially in view of the revisory powers of the Court of Appeals under Art. 93, sec. 251, of the Code.

APPEAL from the Orphans' Court of Prince George's County.

The appellees filed their petition on the 15th day of September 1863, in the Orphans' Court of Prince George's County, praying the Court to recognize a paper writing, alleged by them to be a testamentary paper and will of a certain George Humes, then deceased, and to admit the same to probate, so far as it affects his personal estate, and the appointment of the appellees executors and guardians of Humes' infant children. The paper writing is perfect in all its details, but the name of George Humes is not signed to it. The attestation clause was attached on the day after the will bears date, and there are no attesting witnesses.

On the above petition the Orphans' Court passed an order that George C. Humes and Mareen D. Humes, the infant children of George Humes, be admitted by their

next friend, Leonard J. Mills, as caveators, to contest the validity and probate of the alleged will. They appeared accordingly; and on the 23rd day of September 1863, filed their petition or caveat, alleging that this paper writing was not the will of George Humes, but that he died intestate, and at the time this paper was written, he was not of sound and disposing mind, memory and understanding, and possessed of testamentary capacity to make said will.

Upon the filing of this caveat, the Court proceeded to take testimony, the parties having appeared by their respective counsel.

In the progress of the trial, the appellees offered a release of Mrs. Jane Humes, mother of George Humes, releasing all her interest or legacy that she might be entitled to under the alleged will, and the release was filed in the cause after the examination of several witnesses, including Mrs. Humes, the further hearing of the cause was continued. On the 30th day of September 1863, the caveators filed a further petition, alleging that since the filing of their caveat, no answer had been put in, and no cost had been incurred; that it had been ascertained that Leonard J. Mills, their next friend, was a material witness for them, and that the materiality of his evidence was disclosed by the testimony of William H. Ward; and that it would be for their advantage that the Orphans' Court should appoint some one else as their next friend, to contest the said paper writing. They pray that the former order appointing Leonard J. Mills as next friend, may be so modified as to substitute Susan Duvall as next friend, with liberty to file another caveat to the will and probate thereof. This application was refused by the Court, and from this refusal the caveators appealed.

The caveators then filed another petition and prayed for an answer under oath, and for plenary proceedings on

their caveat. On the day this last petition was filed, the 30th day of September 1863, the Orphans' Court dismissed it on the ground that the application was made too late, and for further reasons exhibited in its order of dismissal. From this order an appeal was taken.

On the 13th day of October 1863, the caveators came again into Court, and filed another petition, in which they allege that the proceedings which had taken place were plenary; that they have other and material witnesses residing in the City of Washington, whose evidence cannot be obtained by any process out of the Orphans' Courts, and they are desirous to have issues framed, to be transmitted to the Circuit Court for Prince George's County for trial; which issues appear upon the face of their petition. This petition was also dismissed, and the prayer for issues rejected by an order of the Orphans' Court, from which the caveators also appealed.

The respective parties again appeared in Court on the 27th of October 1863, and the Court proceeded to take further testimony.

After the evidence was closed and the case was argued on both sides, the Court passed its final decree, admitting the paper writing to probate, in so far as it disposes of the personal property of the deceased, and the appointment of the appellees as his executors, and dismissed the caveat. From this final decree an appeal was also taken.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, and Cochran, J.

*Daniel Clarke,* for the appellants.

1st. The first question which is presented upon this appeal is, did the Court act correctly in passing the said order, of September 30th 1863, refusing the prayer of the petitioners?

In the Orphans' Courts of the State, although there is no regular and formal mode of proceeding as in Courts of Equity, still, in a proceeding like this, it cannot be doubted that infants may appear and contest the probate of a will in which they are interested, by their next friend or guardian. The power of infants to prosecute a writ in equity by guardian or next friend is unquestioned. *Alexander's Ch. Prac.*, 211. And where a matter has not been put by the bill properly in issue to the prejudice of the infant, the Court has generally ordered the bill to be amended. *Alexander's Ch. Prac.*, 211. See also *Story's Eq. Pl.*, secs. 57, 58, 59, 60.

If the person who thus acts as a friend of the infant, does not lay his case properly before the Court, by collusion, neglect or mistake, a new bill may be brought in behalf of the infant. And if a defect appears on the hearing of the cause, the Court acting in favor of infants, generally does order it to stand over, with liberty to amend the bill. *Story Eq. Pl.*, 59.

And the principle has been recognized that where the *prochein ami* of an infant dies during the prosecution of the suit, the Court will appoint another. *Richards & Wife vs. Swan,* 7 *Gill,* 366, 376. 1 *Ambler,* 398. 3 *Maddox,* 468.

Upon the principles of law announced in the foregoing authorities, I contend it is clear the Court should have granted the prayer of the petitioners, and substituted another person as next friend to carry on the caveat.

3rd. The petition praying for plenary proceedings, proceeded upon the theory, that up to this point, in considering the caveat, and the evidence adduced upon the question of admitting the paper of G. H. to probate, the proceedings of the Orphans' Court were informal and had assumed no regular shape. No answer under oath had been demanded—both parties proceeded in the caveat in an informal manner as proceedings are

usually conducted in our Orphans' Courts. In the case of *Cover vs. Stockdale*, 16 *Md. Rep.*, 11, it is ruled, "that in plenary proceedings in the Orphans' Court the answer must be on oath, and objection thereto for want of an oath is not waived by the mere fact that the cause was argued before that Court by counsel for the petitioners, before the passage of an order dismissing their petition." This would seem to settle the question that the proceedings in this case prior to the filing of the foregoing petition of September 30th, had not assumed a plenary form, inasmuch as the appellees had not been called on to answer under oath, and no answer under oath had been filed.

Had the appellants therefore a right at this stage of the inquiry, as to the probating of the alleged will, to require the Court to direct plenary proceedings upon the caveat? If so, the order of the Court must be reversed.

Section 249 of Art. 93 of the Code provides, that "the Orphans' Court may in all cases of controversy therein, upon the application of either party, direct a plenary proceeding by bill or petition, to which there shall be an answer on oath," &c. This provision in the Code is the same as the Act of 1798, ch. 15, secs. 15, 17.

In *Barroll vs. Reading*, 5 *H. & J.*, 175, the Court of Appeals decide, that either party concerned in the question, whether a will shall be admitted to probate, has a right at any stage of the proceedings in Orphans' Court, prior to final decision, to have a plenary proceeding directed, and an issue sent to the Court of Law for trial.

And further to sustain the position that where there is a dispute, as in this case, in regard to the facts, and facts are in issue between the parties, it is incumbent on the Orphans' Court to order a plenary proceeding. See *Cain vs. Warford*, 3 *Md. Rep.*, 454, 462. *Pegg vs. Warford*, 4 *Md. Rep.*, 385, 393, 394.

The only case wherein the Court can exercise a discretion in ordering a plenary proceeding, is that wherein nothing but a merely legal question is involved, and no dispute as to facts. *Cain vs. Warford,* 3 *Md. Rep.,* 454. In this case the Court will perceive there is no legal question raised. The questions involved are questions of fact, whether the paper, G. H., is the will of George Humes, and whether he was possessed of testamentary capacity. For these reasons the order passed on the 30th of September 1863, must be reversed.

3rd. The petition, filed October 13th 1863, proceeds upon the theory, that in point of fact and law, the proceedings which had already taken place were plenary, and that the appellants at any time before final decree had a right to have issues framed, to be transmitted to the Circuit Court. That the proceedings were plenary, the case of *Pegg et al. vs. Warfield,* 4 *Md. Rep.,* 385, 386, 397, will be relied on, which seems, however, somewhat in conflict with the case of *Cover vs. Stockdale,* 16 *Md. Rep.,* 1, already referred to. They may be reconciled, however, by the fact, that in *Cover vs. Stockdale* it does not appear that any answer was filed, so as to bring the parties to an issue, viz: an allegation and a denial. In *Pegg vs. Warfield,* 4 *Md. Rep.,* 386, it is held that "whenever a bill or petition be filed, whether or not the parties are cited to appear, if, in point of fact, they do appear and answer, the proceedings are plenary. In the same case, which is relied upon to establish the right of the appellants to have the issue framed, as prayed in their petition, it is held, "that under the Act of 1798, ch. 101, at any stage of the proceedings before final adjudication, either party may require an issue, and the Orphans' Court is not at liberty to refuse it." Section 250 of Art. 93 of the Code, under which the issues were prayed, is the same as the provisions of the Act

of 1798, ch. 101, and the right of a party to require an issue or issues at any stage of the proceedings before final adjudication, remains unchanged.

See further, where issues were granted as prayed in this case. *Brooke vs. Townshend*, 7 *Gill*, 15. *Boofter vs. Rogers*, 9 *Gill*, 46. *Smith vs. Young*, 5 *Gill*, 197.

*Wm. H. Tuck* and *C. C. Magruder*, for the appellees, argued:

1st. That the Court properly refused to substitute a *prochein ami* in the place of Mills, in order to examine him as a witness.

2nd. That a controversy in the Orphans' Court involving the validity of a will may be conducted either upon a summary or plenary proceeding, but neither party has the privilege of trying his case in both ways.

3rd. If in the progress of the trial of a caveat, a party applies in time for plenary proceedings and to have issues sent to a Court of Law, and the Orphans' Court refuses, he may decline to proceed further in the trial, and submit to a final decree, and take his appeal. But if, after the Court refuses his application for plenary proceedings and issues, he proceeds to the trial before the Orphans' Court, and a full hearing be had, he waives his objection to the refusal of the Court to order plenary proceedings and issues, and loses the benefit of his appeal from such refusal. Hence the appeal in this case from that order should be dismissed. But, if not dismissed it will be contended that the Court properly refused the caveator's application.

1st Point. The Court did not err in their refusal to allow Mills to withdraw, and substitute another *prochein ami*. By filing the petition, Mills had become a party to the proceedings, and must be treated as if he were a party in interest. This is not like the case of a next friend's dying. There another can be substituted as when a real

45      v. 22.

party dies. However, for some purposes, the minors are regarded as the real parties, the next friend is none the less a party as to others. He appears for the minors, and conducts the cause for them, and is chargeable with costs, and where that is the case, he is so far interested as to be incompetent to testify. The other side has shown no case where a party to the record has been examined as a witness.. It is sometimes done in Chancery, but then the party using the testimony of his adversary, waives his right to a decree against said party. If this practice were allowed, there is no telling how many different parties might be introduced into the same cause. In *Mitchell vs. Mitchell*, 11 *G. & J.*, 388, it was decided—see p. 394—that the surety on the administration bond of a plaintiff is not a competent witness for the plaintiff—(the head note is not correctly stated.) And where an offer was made to deposit in Court a sum to cover the costs, the plaintiff was not allowed to testify. *Ewing & Garret vs. Owings,* 7 *Gill,* 407. See also, 3 *Gill,* 244, 430. 7 *Gill,* 242. 6 *Md. Rep.,* 37.

In some cases hardship may be caused by rejecting such evidence, but this is the fault, not of the law, but of the party in so framing his case as to deprive himself of material evidence. Here the trial had commenced, and it would seem to be irregular to stop the proceedings in order to make a new party not necessary to a final and effective decree.

2nd and 3rd Points. As to the refusal of the Court to direct plenary proceedings and to send issues for trial at law, we insist that it was competent for the caveators to have declined to proceed further with the trial in the summary manner in which it had been conducted, or to have waived all objection to the jurisdiction of the Court, and to continue the trial of the caveat. They did continue the trial, and on the 23rd October, to which day the hearing was adjourned, examined witnesses in sup-

port of the caveat, and prosecuted the controversy to a close, when the final judgment of the Court was pronounced. The caveators examined the witnesses who resided in Washington, and it is to be assumed had the benefit of all his available proof. A caveat may be conducted in a summary way, if the parties so elect. *Barroll & Cannell vs. Reading,* 5 *H. & J.,* 175.

And although either party in a plenary proceeding may ask for issues, yet if they elect to proceed in a summary way to try the case, it is allowable; but it cannot be maintained, that a party has the right and privilege of proceeding in both modes; if he had, the result would be to give him the benefit of two trials. If a party intends to ask for a plenary proceeding and issues before the Orphans' Court, he should do so within a reasonable time. In the trial of a case like this before the Orphans' Court, the rule should be under a fair construction of the Act of Assembly,—that a party *in limine* should determine in what way he will conduct his suit, whether upon a summary or plenary proceeding; this would be dealing fairly both with the Court and opposite party. The Orphans' Court are not bound in all cases to grant issues. *Smith & Wife vs. Young,* 5 *Gill,* 197. The case in 5 *H. & J.,* 175, will be found not to militate against this position; we have not been able to obtain the record in that case to see whether the party proceeded with the trial or took his appeal immediately, and let the final order or decree be entered. In that case the Court appear to have placed their decision on the ground that under the law of 1798, the party might at any time ask for a plenary proceeding and issues. The 16th sec. of sub ch. 15, provides, that "whenever either party shall require," &c. &c., but the Code has no such word—Art. 93, sec. 249, 250, 251—the words are, "the Orphans' Court may direct," &c. Sometimes, indeed, *may* is construed to mean *shall,* but not where the law has been

changed from words importing obligation to such as imply discretion in the Court, and this change by the codifiers, sanctioned by the Legislature, must be accepted as made for the purpose of altering the practice. The Act of 1798, and the Code are not the same as contended on the other side. In *Barroll & Cannell vs. Reading,* the application was made early after the commencement of the trial. The same course was pursued in *Pegg et al. vs. Warford,* 4 *Md. Rep.,* 385, the application for issues was made immediately; so also, in the case of *Townshend vs. Brooke,* 9 *Gill,* 506; *Marriott, Exc'r vs. Handy & Wife,* 8 *Gill,* 31. The issues in all these cases were applied for at the earliest stage of the controversy, and they seem to establish what the practice should be at this day. The appellants in their petition filed on the 23rd October, alleged that the proceedings were plenary, although they had before in their previous petition insisted that they were summary. It is contended that the proceedings were not plenary. There had been no bill filed and no order of the Court for an answer under oath, and it is only in such a state of pleading that the law authorizes the Orphans' Court to direct issues to be framed and sent to another tribunal for trial. Code, Art. 93, sec. 249. *Cover vs. Stockdale,* 16 *Md. Rep.,* 1.

The law is settled that the granting of issues by the Orphans' Court to be tried by a jury, suspended their functions, and the converse of the proposition must be true, that if a party objects to the further proceedings of the Orphans' Court in a case, and exercises his privilege of asking for its removal to another Court, and upon the refusal of the Court takes an appeal, and then resumes the trial without objection, he waives all objection to the action of the Court, acquiesces in its further jurisdiction and is bound by its action. *Pegg vs. Warford,* 4 *Md. Rep.,* 385.

[*Note.*—As this Court do not in their opinion pass upon the merits of the case, the arguments upon the merits are omitted.]

GOLDSBOROUGH, J., after having stated the case (*ante* pp. 347–349,) delivered the opinion of this Court, as follows:

By section 251, of Article 93 of the Code, provision is made that in case of an appeal from the final decree of an Orphans' Court, any motion or application to the Court, and the order or decree therein shall be filed as part of the proceedings, and shall be subject to the judgment and revision of the Appellate Court. In view of the authority thus conferred, we shall consider the ruling of the Orphans' Court in rejecting the petition of the caveators, in which they pray that another individual may be substituted as their next friend in the place of Leonard J. Mills.

This application was made by infant petitioners who are always regarded as under the especial protection of the Orphans' Court. They allege a very sufficient reason for the interposition of the Court: that Mills was a material witness for them, and that the materiality of his evidence was discovered after the disclosure of the evidence of William H. Ward, the attorney who wrote the will in controversy. We think the Court ought to have granted the application upon terms, if any costs had been incurred for which Mills as a party to the record would have been answerable. In the case of *Helms vs. Franciscus*, 2 *Bl. Ch. Rep.*, 550, it is said: "It is clear that any one so long as he stands before the Court as next friend of an infant or *feme covert* plaintiff, being liable for costs, is therefore an interested and incompetent witness. But where the object is not to favor the escape of such next friend from any liability, arising from the suits having been improperly instituted or conducted by him, he may be made a competent witness by being discharged, and

having another put in his place; and the Court will, on application, at any time before final· hearing, allow a change to be made for that purpose, on its being shown to be necessary, and on the costs then incurred being secured.

The analogy between proceedings in Chancery and in the Orphans' Court, in this particular, would have justified the Court in ordering the substitution, and we think it was error in the Court to refuse to do so.

The Court also erred in dismissing the petition of the caveators in which they pray for a plenary proceeding, and that the parties applying for a probate of the will be required to answer under oath. This petition was designed to lay the foundation for a plenary proceeding, and would have secured to the caveators the benefit of the provisions of sec. 249 of the 93rd Article of the Code. See also the case of *Cover vs. Stockdale,* 16 *Md. Rep.,* 11.

The Court also erred in refusing to order issues to be framed, at the time the caveators prayed therefor. A substantial reason is assigned by them why issues should be framed: "That they have material testimony to offer· affecting the probating of the paper writing, and that some of the witnesses who are competent, and whose evidence is material to the controversy, reside in the City of Washington, beyond the jurisdiction of this Court, that your petitioners have endeavored to procure their attendance up to this time, in vain, and that they are without any process to force their attendance."

In the case of *Barroll & Cannell vs. Reading,* 5 *H. & J.,* 175, Judge BUCHANAN referring to the Act of 1798, ch. 101, sub ch. 15, secs. 15, 17, says: "The regular mode of proceeding in opposition to the admission of a will to probate is by a *caveat;* and it may often happen, (and probably most frequently does happen) that the necessity for a plenary proceeding and trial by jury is only discovered after a part, at least, of the testimony is taken; and at any stage of the proceedings, before final adjudication,

either party may require it, and the Court is not at liberty to refuse it.'' See further (when facts are involved) *Cain vs. Warford*, 3 *Md. Rep.*, 454, 462; and *Pegg vs. Warford*, 4 *Md. Rep.*, 385, 394, 395.

It is, however, contended by the appellees, that there is a difference between the above Act and the Code. We have carefully examined and compared them, and find no material difference. The right to have plenary proceedings is equally secured by the Code.

The authorities referred to by the appellees as to waiver of prior rights by proceeding to final decree are cases at law. The caveators in this case, by temporarily submitting to the interlocutory orders of the Court, did not in our judgment debar themselves from any rights they might have, especially in view of the revisory power of this Court upon appeal under the 251st section of Art. 93.

Without expressing any opinion upon the merits of the case on the evidence, we shall reverse the decree of the Orphans' Court, and remand the cause for further proceedings in accordance with the views expressed by this Court.

*Decree reversed, with costs to the appellants,*
*and cause remanded.*

(Decided November 25th 1864.)