890 A.2d 726

**Katherine Rose FOX**

v.

**Vincent WILLS.**

**No. 43, Sept. Term, 2003.**

Court of Appeals of Maryland.

Jan. 18, 2006.

[black redaction box]

Gregory F. Jacob of Arlington, VA (Elizabeth L. Ritter of Chevy Chase), on brief, for petitioner.

David Super, Christopher Thomas Stidvent, Clarissa Hodges, Baker Botts LLP, Washington, D.C., on brief of amicus curiae Justice of Children on behalf of petitioner.

William of Brockman, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland; Steven M. Sullivan, Solicitor General of Baltimore) on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

ELDRIDGE, J.

We issued a writ of certiorari in this case to determine whether counsel, appointed for a minor pursuant to Maryland Code (1984, 2004 Repl.Vol.), § 1–202 of the Family Law Article, is entitled to immunity from tort liability while acting in his capacity under the statute.[1]

## I.

Petitioner, Katherine Fox, is a minor child whose parents were divorced pursuant to a judgment entered by the Circuit Court for Montgomery County. Respondent, Vincent Wills, an attorney, was initially appointed by the Circuit Court as Katherine's "guardian," in accordance with Maryland Code (1974, 2002 Repl. Vol.), § 9–109(c) of the Courts and Judicial Proceedings Article, for the sole purpose of deciding whether

---

1. Section 1–202 of the Family Law Article in its entirety states as follows:

" § 1–202. Appointment of attorney for minor; fees

In an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may:

(1) appoint to represent the minor child counsel who may not represent any party to the action; and

(2) impose against either or both parents counsel fees."

Katherine should waive her patient-psychiatrist privilege.[2] Subsequently, Wills was appointed counsel for Katherine pursuant to § 1–202 of the Family Law Article.

Following judgment in the divorce case, Elizabeth Ritter, the child's mother, on behalf of Katherine, filed in the Circuit Court for Montgomery County a legal malpractice action against Wills. The complaint asserted that Wills was negligent in his representation of Katherine while functioning as her "guardian *ad litem*." [3] It was alleged that Wills abdicated his responsibilities as counsel for the child, that he did not act in accordance with Katherine's best interests, and that he was in fact an advocate for the child's father who was suspected of sexually abusing Katherine. The complaint further alleged that Wills ignored the trial court's orders in that he failed to ensure that the child's father was supervised during visitation, that he failed to ensure that Katherine was placed in a car

---

2. Section 9–109 of the Courts and Judicial Proceedings Article provides in pertinent part as follows:

"(b) *Privilege generally.*—Unless otherwise provided, in all judicial, legislative, or administrative proceedings, a patient or the patient's authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing:

(1) Communications relating to diagnosis or treatment of the patient; or

(2) Any information that by its nature would show the existence of a medical record of the diagnosis or treatment.

(c) *Appointment of guardian.*—If a patient is incompetent to assert or waive this privilege, a guardian shall be appointed and shall act for the patient. A previously appointed guardian has the same authority."

In *Nagle v. Hooks*, 296 Md. 123, 460 A.2d 49 (1983), this Court held that a court's obligation to appoint a guardian, set forth in subsection (c), is mandatory.

3. Although the parties and the courts below use the term "guardian *ad litem*," referring to Wills's appointment under § 1–202 of the Family Law Article, we note that the term is not, and apparently has never been, used by the Maryland General Assembly in describing such appointments. The term does not appear in § 1–202. In fact, there appears to be no enactment by the General Assembly or Rule of this Court providing for the appointment of an individual called a "guardian *ad litem*." Wills's appointment under § 1–202 was purely as counsel for Katherine as described in the statute; no other legal basis was relied on for his appointment.

seat when transported during visitations, that he failed to address the issue of the father's inappropriate touching of Katherine, and that he failed to address the numerous reports of the father's inappropriate exhibitions of anger in front of Katherine. The complaint also alleged that Wills deliberately prevented evidence of child sexual abuse from coming before the court by suppressing and distorting the report of a psychological expert appointed by the court to evaluate the claims of abuse, which report advised against unsupervised visitation between the child and her father. The complaint made several allegations that Wills breached his duties as counsel by improperly allowing his friendship with the child's father to influence his judgment regarding the child's best interest.

Wills filed a motion to dismiss the complaint, arguing that, because of his position as counsel for the child under § 1–202, he was entitled to "absolute quasi-judicial immunity." He contended that he was functioning on behalf of and for the benefit of the court. Alternatively, Wills argued that, even if he were not entitled to "absolute quasi-judicial immunity," he was entitled to "qualified immunity," and that the allegations of the complaint were insufficient to show the malice needed to overcome qualified immunity. In response, the plaintiff argued that Wills was not acting on behalf of and for the benefit of the court, but was acting as the attorney for Katherine. The plaintiff contended that Wills was neither entitled to "absolute quasi-judicial" immunity nor entitled to qualified immunity.

The Circuit Court granted the motion to dismiss, stating "that there is clearly privilege here or immunity, whether it is qualified or quasi-judicial." [4]

The plaintiff appealed, and the Court of Special Appeals affirmed, *Fox v. Wills,* 151 Md.App. 31, 822 A.2d 1289 (2003).

---

4. The Circuit Court did not decide which type of immunity was, in the court's view, applicable. The trial court presumably decided that if the immunity was qualified, the allegations of the complaint were insufficient to show malice.

Like the Circuit Court, the Court of Special Appeals did not decide whether counsel appointed under § 1–202 "enjoys absolute judicial immunity . . . [or] qualified immunity," because, in the court's view, the complaint did not allege "malice." *Fox v. Wills, supra,* 151 Md.App. at 42 and n. 10, 822 A.2d at 1296 and n. 10. Relying on some prior Court of Special Appeals' opinions, as well as authority from other jurisdictions, the Court of Special Appeals reasoned that counsel appointed pursuant to § 1–202 does not function " 'strictly as legal counsel to a child client,' " acts principally as an arm of the court, is "performing judicial functions," and thus enjoys "at least qualified immunity," *Fox v. Wills,* 151 Md.App. at 40, 42, 44, 822 A.2d at 1294–1296. The Court of Special Appeals explained (151 Md.App. at 41, 822 A.2d at 1295, footnote omitted):

> "Negligently reporting to the court and making a recommendation that is not in the child's best interest, not speaking to the child's therapist when there are allegations of abuse, or choosing not to bring the therapist's concerns to the court, could be characterized as negligent and even reckless actions in some instances. The attorney, as guardian *ad litem,* acts mainly as an arm of the court and performs judicial functions in these situations, however, and enjoys immunity in the performance of those judicial functions, even if he acted negligently."

The plaintiff filed in this Court a petition for a writ of certiorari, presenting the questions of whether Wills was entitled to "immunity from a malpractice suit" and, if he were entitled to qualified immunity, whether the factual allegations of the complaint were sufficient to set forth malice. We granted the petition, *Fox v. Wills,* 376 Md. 139, 829 A.2d 530 (2003), and we shall reverse. Because we shall hold that an attorney appointed pursuant to § 1–202 of the Family Law Article is not entitled to any type of immunity from a malpractice suit, we shall not decide whether the complaint was sufficient to allege malice.

## II.

As pointed out above, the holding by the Court of Special Appeals, granting immunity to counsel appointed under § 1–202 of the Family Law Article, was based upon that court's view that such attorney is not primarily an advocate for the child, but acts principally as an arm of the court and performs judicial functions. The Court of Special Appeals first adopted this position by dicta in *Leary v. Leary,* 97 Md.App. 26, 39–48, 627 A.2d 30, 36–41 (1993), which equated a § 1–202 counsel with a "guardian *ad litem* " as such "guardian" is viewed in various out-of-state authorities. *See also Auclair v. Auclair,* 127 Md.App. 1, 17, 730 A.2d 1260, 1268 (1999) ("In custody matters, the guardian *ad litem* has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client"); *In re Sonny E. Lee,* 132 Md.App. 696, 718–720, 754 A.2d 426, 438–440 (2000).

The Court of Special Appeals' view of a § 1–202 counsel was not grounded on the language of the statute, or on its history, or on any prior opinions by the Court of Appeals. Instead, to reiterate, the view set forth in *Leary v. Leary, supra,* 97 Md.App. 26, 627 A.2d 30, and its progeny, appears to have been based on non-Maryland statutes, cases, and articles dealing with the nature, powers, and duties of "guardians *ad litem* " elsewhere. In light of this, it would be useful to review some of the background in Maryland concerning "guardians *ad litem* " and counsel appointed for minors, and to contrast the development of the law in this State with that in some other jurisdictions.

### A.

Preliminarily, it is noteworthy that the term "guardian *ad litem* " has been rarely used by the Maryland General Assembly or by this Court. When the term has been used by the General Assembly or by this Court, it usually has been synonymous with "next friend" or "*prochein ami,*" which is one who brings suit on behalf of a minor or disabled person

because the minor or disabled person lacks capacity to sue in his or her own right, or synonymous with one who defends a suit against a minor or disabled person lacking the capacity to defend. This is in sharp contrast with the use of the term in some other jurisdictions where statutes or case law provide for the appointment of "guardians *ad litem*" and set forth the powers, functions, and duties of such persons.

The first mention of a "guardian *ad litem*" by this Court appears to have been in *Davis v. Jacquin & Pomerait*, 5 H. & J. 100, 110 (1820), where the Court rejected the argument that an infant must sue by his or her guardian, pointing out that the law was changed by statute enacted in 1285:

"By the common law, infants were obliged to sue by guardian; but they were enabled by the Statute of Westminster the 2d, to sue by *prochein amy;* and the guardians of the person, and guardians *ad litem*, are essentially different in their creation and powers. The power of appointing the latter is incident to all Courts, and they are admitted by the Court for the particular suit, on the infant's personal appearance, without inquiring whether the person admitted is the guardian of the person of the plaintiff."

Most of the opinions by this Court dealing with the subject use the terms *"prochein ami"* or "next friend" rather than the term "guardian *ad litem*." Moreover, the opinions by this Court make it clear that such an individual's sole function is to represent properly the interests of the minor, and that the court's function is to remove the individual if he or she is not properly representing the minor. The opinions do not indicate that a *"prochein ami"* or "next friend" or "guardian *ad litem*"* performs any function for the court that could be described as "judicial" or "quasi-judicial."

Thus, in *Reichard v. Izer*, 95 Md. 451, 466–467, 52 A. 592, 595 (1902), Judge Andrew Hunter Boyd for the Court pointed out that the "next friend" or *"prochein ami"* or "guardian *ad litem*"*

"is always subject to the control of the Court for the protection of the infant. If this were not so any one might

involve an infant in litigation by making himself his next friend. The Court has power to revoke his authority, remove him and if it be necessary to appoint another in his place. *Deford v. State*, 30 Md. 199; 14 *Ency. of Pl. and Pr.*, 1041. The Orphans Court can remove a next friend and appoint another in his place in order to let the first one testify in behalf of the infant, upon the costs already incurred being secured, and it is error not to do so. *Mills v. Humes' Executors*, 22 Md. 346. And it would seem that they can undoubtedly remove one if they believe it to be to the interest of the infant. In this case it was the duty of the Orphans' Court to inquire into the application of the infant, who is nineteen years of age, and if they found that the next friend was not acting for the interest of the infant, or was acting in the interest of the other parties, to remove him."

*See also, e.g., Trahern v. Colburn*, 63 Md. 99, 104, 1885 WL 3238 (1885) (A *"prochein ami"* is "specially appointed by [the court] to look after the interests of the party in whose behalf he acts ..., and it is competent for the court to revoke his authority and remove him, and, if necessary, appoint another in his place"); *Wainwright v. Wilkinson*, 62 Md. 146, 147–149 (1884) ("The *prochein ami* was the only person who was authorized to prosecute the suit. She is responsible for costs, and is charged with the duty of employing an attorney, and protecting the interest of the infant. * * * It is in the power of the court to remove the *prochein ami*, but while she sustains such relation, she must have the entire control of the conduct of the suit"); *B. & O.R.R. Co. v. Fitzpatrick*, 36 Md. 619, 624–625 (1872) (same); *Deford v. State, Use of Keyser*, 30 Md. 179, 190 (1869) (A *prochein ami* "stands very much in the relation of an attorney to the case, and ... it is competent at any time for the court to revoke his authority and remove him, and if it be necessary, to appoint another in his place"); *Baltimore v. Norman*, 4 Md. 352, 358–361 (1853) (A minor, by a *prochein ami*, can maintain a tort action based on a conversion of the minor's property by an earlier guardian).

More recently, Judge Karwacki for this Court in *Berrain v. Katzen*, 331 Md. 693, 629 A.2d 707 (1993), reviewed the history

of the concept of *"prochein ami"* or "next friend" or "guardian *ad litem.*" In *Berrain,* the mother of three minor children, acting as next friend, sued their landlord for alleged injuries caused to her children because of their ingestion of lead paint in the rental home. Early in the case, the mother had failed to respond to interrogatories propounded by the defendant, and the circuit court entered a default judgment. This Court held that such a sanction was an abuse of discretion on the part of the trial judge because a special duty is owed by the court to protect the rights of minors who are represented by next friend. In so holding, the Court explained (331 Md. at 701–702, 629 A.2d at 710–711):

"The function of the next friend, or *prochein ami*[6], has its genesis in ancient English statutory law. The first statute permitting a next friend to sue on behalf of infants was promulgated by Parliament as 3 Edw. 1, Cap. 48 (1 Westminster 8) in 1275 and was limited to those cases where the guardian had acted to bar his ward's cause of action. In 1285, Parliament extended the right of a next friend to sue on behalf of an infant to all actions by 13 Edw. 1, Cap. 15 (2 Westminster 15). As was explained in J.H. Thomas's arrangement of Lord Coke's *First Institute:"*

"At common law, infants could neither sue nor defend, except by *guardian;* by whom was meant, not the guardian of the infant's person and estate, but either one admitted by the court for the particular suit on the infants' personal appearance, or appointed for suits in general by the king's letters patent. But this rule was found inconvenient, it sometimes happening, that an infant was secreted by those having legal custody of him,

---

**6.** " 'PROCHEIN. L. Fr. Next. A term somewhat used in modern law, and more frequently in the old law; as *prochein ami, prochein cousin.'* " Co. Litt. 10.

"PROCHEIN AMI. (Spelled, also, *prochein amy* and *prochain amy* ). Next friend. As an infant cannot legally sue in his own name, the action must be brought by his *prochein ami;* that is, some friend (not being his guardian) who will appear as plaintiff in his name. Black's Law Dictionary, Revised Fourth Edition, (1968)."

and so prevented from applying to have a guardian *ad litem* appointed. Hence was seen the necessity of permitting any persons to litigate for the infant's benefit, who should be disposed to risk the expense. On this principle the Statute of Westminster the first enables any one to sue as *prochein amy* for any infant in an assize, where the infant himself is essoigned by his guardian, or otherwise disturbed from suing the assize. The statute of Westminster the second extended this provision by permitting the *Prochein amy* to sue in *all* actions; and though in this statute, as well as in the former, eloignment of the infant was mentioned, yet by construction it is not deemed necessary, but the *prochein amy* may sue, whether that circumstance occurs or not, it being considered merely as an instance of the necessity of the case, and as such only taken notice of by those who framed the statute."

"J. H. Thomas, *Lord Coke's First Institute of the Laws of England* 199 n. 29 (1827)."

"13 Edw. 1, Cap. 15 was one of the 'statutes found applicable and proper to be incorporated' into the laws of Maryland when the first Maryland Constitution was adopted in 1776. Art. 5 Declaration of Rights (1776); *Kilty's English Statutes To Be In Effect In Maryland* 212 (1811). *See also* 1 John P. Poe, *Pleading and Practice in Courts of Common Law*, § 313 (Herbert T. Tiffany ed., 5th ed.1925); Ward B. Coe, *Alexander's British Statutes in Force in Maryland*, 158–61 (2d ed.1912)."

The Court in *Berrain*, 331 Md. at 703–704, 629 A.2d at 711–712, went on to emphasize that the *prochein ami* " 'stands very much in the relation of an attorney to the case,' " that the *prochein ami* acts " 'for the benefit of infants,' " that his or her "duty" is owed to the minor, and that the court's function is "in overseeing the exercise of that duty."

The Maryland common law function of a "prochein ami" or "next friend" or "guardian *ad litem*" is today embodied in Maryland Rule 2–202, which provides in pertinent part as follows:

"**Rule 2–202. Capacity.**

(a) **Generally.** Applicable substantive law governs the capacity to sue or be sued of an individual, a corporation, a person acting in a representative capacity, an association, or any other entity.

(b) **Suits by individuals under disability.** An individual under disability to sue may sue by a guardian or other like fiduciary or, if none, by next friend, subject to any order of court for the protection of the individual under disability. When a minor is in the sole custody of one of its parents, that parent has the exclusive right to sue on behalf of the minor for a period of one year following the accrual of the cause of action, and if the custodial parent fails to institute suit within the one year period, any person interested in the minor shall have the right to institute suit on behalf of the minor as next friend upon first mailing notice to the last known address of the custodial parent.

\* \* \*

(d) **Suits against individuals under disability.** In a suit against an individual under disability, the guardian or other like fiduciary, if any, shall defend the action. The court shall order any guardian or other fiduciary in its jurisdiction who fails to comply with this section to defend the individual as required. If there is no such guardian or other fiduciary, the court shall appoint an attorney to represent and defend the individual."

On the other hand, § 1–202 of the Family Law Article, which furnished the basis for Wills's appointment in the case at bar, appears to have no historical linkage to the concept of "guardian *ad litem* " as occasionally used in Maryland law.

## B.

Numerous states, unlike Maryland, have statutes providing for the appointment of "guardians *ad litem*," although there is little uniformity in the case law and statutes of other states with regard to the functions, duties, and immunities of "guard-

ians *ad litem.*" Compare, for example, Michigan Compiled Laws 712A.13a(1)(b), 712A.17d(1) (stating that an attorney in child protection proceedings serves as the legal advocate for the child under the "traditional attorney-client relationship" and shall act pursuant to those obligations and the rules of professional conduct), with Arizona Revised Statutes Annotated, Children, § 8–522 (requiring that a "special advocate" be appointed as "guardian *ad litem* " to protect the child's best interest on behalf of the court, defining the duties of guardians *ad litem,* and granting guardians *ad litem* civil and criminal immunity for actions taken in good faith, within the scope of those duties).

The functions of such individuals can cause confusion because, as pointed out in several articles, they are sometimes seen as performing conflicting roles under the statutes that empower them. *See, e.g.,* Note, *Lawyering for the Child: Principles of Representation in Custody and Visitation Disputes Arising from Divorce,* 87 Yale L.J. 1126, 1141 (1978); Donald N. Duquette, *Legal Representation for Children in Protection Proceedings: Two Distinct Lawyer Roles are Required,* Fam.L.Q. (Fall 2000); Linda D. Elrod, *Counsel for the Child in Custody Disputes: The Time is Now,* 26 Fam.L.Q. 53, 57 (1992). Such individuals function as an attorney for the child, advocating for the child's position, but they also are viewed as functioning as an "arm of the court," and owing the primary duty to the court.

Many courts in other jurisdictions have treated the role of "guardian *ad litem,*" under particular statutes, as two-fold, combining the advocacy and "judicial" functions, but taking the position that the ultimate duty is to the court because the attorney is functioning as an "agent" or "arm" of the court. *See, e.g., Cok v. Cosentino,* 876 F.2d 1 (1st Cir.1989); *Myers v. Morris,* 810 F.2d 1437 (8th Cir.1987); *Kurzawa v. Mueller,* 732 F.2d 1456 (6th Cir.1984); *Widoff v. Wiens,* 202 Ariz. 383, 45 P.3d 1232 (Ct.App. Div.1 2002); *Kennedy v. State,* 730 A.2d 1252 (Me.1999); *Tindell v. Rogosheske,* 428 N.W.2d 386 (Minn. 1988); *K.O.H. ex rel. Bax v. Huhn,* 69 S.W.3d 142 (Mo.Ct.App. 2002); *Bird v. Weinstock,* 864 S.W.2d 376 (Mo.App.E.D.1993);

*Billups v. Scott,* 253 Neb. 287, 571 N.W.2d 603 (1997); *Bluntt v. O'Connor,* 737 N.Y.S.2d 471, 291 A.D.2d 106 (2002); *Penn v. McMonagle,* 60 Ohio App.3d 149, 573 N.E.2d 1234 (1990); *Paige K.B. v. Molepske,* 219 Wis.2d 418, 580 N.W.2d 289 (Wis.1998); *Marr v. Maine Dept. of Human Services,* 215 F.Supp.2d 261 (D.Me.2002); *Short v. Short,* 730 F.Supp. 1037 (D.Colo.1990). *See also* 14 A.L.R.5th 929 (1993).

Where courts in other jurisdictions have decided that individuals appointed on behalf of minors function in a "judicial" capacity, the courts have typically done so in accordance with statutes that define the duties of such individuals. *Kennedy v. State, supra,* 1999 Me 85, 730 A.2d 1252–1256; *Paige K.B. v. Molepske, supra,* 219 Wis.2d at 435, 580 N.W.2d at 296; *Widoff v. Wiens, supra,* 202 Ariz. 383, 45 P.3d 1232; *Bird v. Weinstock, supra,* 864 S.W.2d at 380. Thus, in interpreting one such statute, the Supreme Court of Wisconsin in *Paige K.B. v. Molepske* held that a guardian *ad litem* appointed under the Wisconsin statute ultimately functioned on behalf of the court. The Supreme Court of Wisconsin reasoned that, under the Wisconsin statute, the "guardian *ad litem* and the court have the same responsibility—to promote the children's best interests. Because their functions are intimately related, the guardian *ad litem* has absolute quasi-judicial immunity for the negligent performance of these duties." [5]

An Arizona statute, providing for the appointment of a "guardian *ad litem* " for a child, provides that the guardian *ad litem* should "[g]ather and provide independent, factual information to aid the court," and should "[p]erform other duties prescribed by the Supreme Court by rule." Arizona Revised Statutes Annotated, Children, § 8–522(E)(3) & (4). Another statutory provision expressly grants immunity to "guardians *ad litem* " from civil and criminal liability for acts or omissions

---

5. Arguably, the same reasoning could be applied to a lawyer who is not appointed by the court but is hired by a minor, as such lawyer's duty is to promote the minor's best interest. Moreover, any lawyer has a duty of promoting his client's best interest. On the other hand, the Wisconsin statute did expressly provide for the guardian *ad litem* to investigate on behalf of the court and report to the court.

in connection with the responsibilities undertaken in good faith under the statute. *Id.* at § 8–522(H). Similarly, a Maine statute expressly states that a "guardian *ad litem*" is an "agent" of the court, that "the court shall specify" the duties of the guardian *ad litem,* and that the guardian *ad litem* "is entitled to quasi-judicial immunity." 19–A Maine Revised Statutes Annotated, Domestic Relations, § 1507.

As previously mentioned, Maryland has no statute similar to those discussed above. This State has no statute or rule, applicable to the present case, which would support a conclusion that the respondent Wills was "act[ing] mainly as an arm of the court and perform[ing] judicial functions." [6]

## C.

In addition to Maryland's lack of any statute providing that a "guardian *ad litem*" or appointed attorney for a minor should primarily function "as an agent or arm of the court, to which it owes its principal duty of allegiance," [7] § 1–202 of the Family Law Article specifically does not support the theory that an attorney appointed under the statute functions primarily as an agent or arm of the court. Neither the language nor the history of § 1–202 suggest that an attorney appointed pursuant to that statute owes his or her " 'principal duty of allegiance' " [8] to the court or does not function primarily as an advocate for the child.

Section 1–202, set forth at the beginning of this opinion, *supra,* n. 1, is a short and succinct statute authorizing the court to "appoint to represent the minor child counsel who may not represent any party to the action." The only statutory function of such counsel is "to represent the minor child." The clause prohibiting such counsel from representing any party underscores that the attorney's allegiance is owed en-

---

6. *Fox v. Wills,* 151 Md.App. 31, 41, 822 A.2d 1289, 1295 (2003).

7. *Auclair v. Auclair,* 127 Md.App. 1, 17, 730 A.2d 1260, 1268 (1999).

8. *Ibid.*

tirely to the minor child. In fact, the allegations in the present complaint, which are accepted as true for purposes of the motion to dismiss, indicate that the spirit, if not the letter, of this statutory prohibition was violated.

Section 1-202 of the Family Law Article was originally enacted as Code (1974, 1976 Supp.), § 3-604 of the Courts and Judicial Proceedings Article, by Ch. 250 of the Acts of 1976. The title to Ch. 250, reflecting the language of the enactment, indicates that the only purpose of the statute was to provide "for the appointment by the court of attorneys for minors in certain domestic cases," with a prohibition against such an attorney representing any party. The Department of Legislative Reference's bill file on Senate Bill 74, which became Ch. 250 of the Acts of 1976, along with the file on a companion House Bill, contain numerous letters emphasizing the need for an "advocate" or "attorney" for the child in order to assure that the child's best interest is being protected. There is no mention of such an individual having an additional role on behalf of the court.

The entire basis for the Court of Special Appeals' immunity holding is simply nonexistent. There is no Maryland statutory support for the notion that an attorney appointed under § 1-202 of the Family Law Article "acts mainly as an arm of the court and performs judicial functions." Obviously, all Maryland attorneys are officers of the courts and have obligations and responsibilities with respect to the courts. Nevertheless, an attorney appointed under § 1-202 is not by statute or rule rendered any more "an arm of the court" than other Maryland attorneys. The functions of a § 1-202 lawyer are no more "judicial" than the functions of many other trial attorneys who are subject to malpractice suits.

### III.

Our holding that an attorney, appointed pursuant to § 1-202 of the Family Law Article, has no immunity from malpractice suits, is reinforced by several other considerations.

## A.

It is clear that guardians, guardians *ad litem*, and non-judicial personnel appointed by courts for particular purposes, have no immunity from suit under the common law. *See, e.g., County Corporation v. Semmes*, 169 Md. 501, 517, 182 A. 273, 279 (1936) (A court-appointed receiver is liable "should he fail to exercise . . . care and diligence"); *Baltimore v. Norman, supra*, 4 Md. at 358–361 (A minor, by next friend, may bring a tort action where his guardian converted the minor's property); *Gardner v. Parson*, 874 F.2d 131, 144–145 (3rd Cir.1989) (There is "[no] established common-law tradition of absolute immunity for court-appointed guardians"); *Speck v. Speck*, 42 Ga.App. 517, 156 S.E. 706, 707 (1931) (A guardian is "liable to his ward for such damages as may result from any culpable omission or neglect on his part"); *Cagle v. Schaefer*, 115 S.C. 35, 104 S.E. 321, 322 (S.C.1920) ("In failing to perform their duty to defend the action in behalf of their wards, the guardian *ad litem* of the infant defendants and their testamentary trustee were both guilty of culpable negligence which would have subjected them to liability to their wards if any damage had resulted"); Susan L. Thomas, *Liability of Guardian Ad Litem for Infant Party to Civil Suit for Negligence in Connection with Suit*, 14 A.L.R.5th 929, 939 (1993). *See also Wainwright v. Wilkinson, supra*, 62 Md. at 149.

Under Article 5 of the Maryland Declaration of Rights, "the Inhabitants of Maryland are entitled to the Common Law. . . ." While the General Assembly or this Court may change a common law principle, no statute and no decision by this Court have changed the common law to grant tort-immunity to attorneys in the respondent Wills's position. Consequently, under Article 5 of the Declaration of Rights, the respondent Wills has no immunity.[9]

---

9. This sharply contrasts with judicial immunity for judges which was well-established at common law. *See Parker v. State*, 337 Md. 271, 277, 653 A.2d 436, 439 (1995) ("The principle that judicial officers should be immune from all civil liability for their judicial acts has been part of the

## B.

When the General Assembly has intended to grant immunity to court-appointed attorneys or advocates for children, it has done so expressly.

Thus, Code (1974, 2002 Repl.Vol.), § 3–830 of the Courts and Judicial Proceedings Article, creates a "Court–Appointed Special Advocate Program" for CINA cases, whereby court-appointed advocates "[p]rovide the court with background information to aid it in making decisions in the child's best interest." Section 3–830(d) of that statute expressly provides:

"(d) *Liability.*—An advocate or a member of the administrative staff of the Program is not liable for an act or omission in providing services or performing a duty on behalf of the Program, unless the act or omission constitutes reckless, willful, or wanton misconduct or intentionally tortious conduct."

Under the Court of Special Appeals' and respondent Wills's theory, however, the above-quoted provision would have been unnecessary, as the court-appointed special advocate would have quasi-judicial immunity. It would be entirely inappropriate for this Court to append a clause like § 3–830(d) to a different statute not containing an immunity provision.

## C.

Not only has the General Assembly expressly granted immunity to court-appointed advocates or attorneys when it intends that those persons be immune from suit, but recently the General Assembly has specifically refused to grant immunity to a group of court-appointed persons including "a guardian *ad litem* as described in section 1–202 of the Family Law Article."

Senate Bill 535, introduced by Senator Astle at the 2004 session of the General Assembly, would have broadened the definitions of "State personnel" and "State officer or State

common law since very early days"). *See also Gill v. Ripley,* 352 Md. 754, 760–762, 724 A.2d 88, 92 (1999).

employee" in the Maryland Tort Claims Act, Code (1984, 2004 Repl.Vol.), § 12–101 *et seq.* of the State Government Article, to include, *inter alia,* "a guardian *ad litem* as described in section 1–202 of the Family Law Article." The bill would have added a new subsection (15) to the definition of "State personnel" in § 12–101(a) and added new language to § 12–304. The new material that would have been added by the proposed legislation was as follows:

"(15) A JUDICIAL APPOINTEE, INCLUDING A MASTER, EXAMINER, AUDITOR, REFEREE, OR COMMISSIONER AS DEFINED IN RULE 16–814, A RECEIVER AS DEFINED IN RULE 13–102, A PERSONAL REPRESENTATIVE AS DEFINED IN SECTION 1–101 OF THE ESTATES AND TRUST ARTICLE, A GUARDIAN AS DEFINED IN SECTION 13–101 OF THE ESTATES AND TRUSTS ARTICLE, AND A GUARDIAN AD LITEM AS DESCRIBED IN SECTION 1–202 OF THE FAMILY LAW ARTICLE WHO IS APPOINTED FOR THE LIMITED PURPOSE OF INVESTIGATING, TESTIFYING, AND MAKING A REPORT AND RECOMMENDATION TO THE COURT IN PARTICULAR CASE.

12–304

(a) IN THIS SUBTITLE, THE TERM 'STATE OFFICER OR STATE EMPLOYEE' INCLUDES A JUDICIAL APPOINTEE AS DESCRIBED IN SECTION 12–101 OF THIS TITLE."

The effects of Senate Bill 535, if it had been enacted, would be that the above-mentioned court-appointed persons would have qualified immunity under the Maryland Tort Claims Act, that the tort liability of the State under the statute would have been substituted for the tort liability of the named individuals, and that the Maryland Attorney General's Office would have defended tort actions based upon the alleged tortious conduct of these individuals in performing their duties as court appointees.[10]

---

**10.** In some other jurisdictions, the immunities granted to "guardians *ad litem*" has been grounded upon the language of Tort Claims Acts in

The Department of Legislative Services' bill file on Senate Bill 535 of the 2004 legislative session contains a "Fiscal and Policy Note" by the Department which discusses the Bill, refers to the Court of Special Appeals' opinion concerning § 1–202 attorneys, points out that the Bill would grant immunity from tort suits to these individuals, would provide representation by the Attorney General's Office, and concludes that any adverse fiscal impact would be minimal.

The bill file also contains a memorandum on behalf of the Maryland Judicial Conference supporting the "concept" of Senate Bill 535. The memorandum states in pertinent part as follows:

"The Judiciary supports the concept of Senate Bill 535 as it provides legal representation for masters, examiners, auditors, commissioners and other judicial appointees; however, more discussions need to take place to determine who is appropriately included."

In addition, the file contains a letter from the Attorney General's Office opposing Senate Bill 535. The Attorney General's Office took the position that some of the persons covered by the Bill "are already 'State employees' under the" Maryland Tort Claims Act, and, as to them, "this bill is unnecessary." The Attorney General's Office also stated that some of the persons who would be covered by the Bill "are involved in almost strictly private matters" which "are in no way the State's responsibility." Finally, the Attorney General's Office said that, "if this bill is passed, this Office will need to hire additional staff to provide the requested services."

Apparently because of the opposition and concerns, a divided Senate Judicial Proceedings Committee gave Senate Bill 535 an unfavorable report, and it was not enacted. The discussion about which persons ought to have tort immunity, however, illustrates that the matter warrants further legislative consideration. A judicial addition of an immunity clause

those jurisdictions. There is no language in Maryland's Tort Claims Act, however, which could reasonably be construed as encompassing attorneys appointed under § 1–202 of the Family Law Article.

to § 1–202 of the Family Law Article would not be an appropriate resolution of the matter under the circumstances.

For all of the previously-discussed reasons, we conclude that Wills was not entitled to immunity from a malpractice action.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*