202 P.3d 577

**In the Interest of K CHILDREN: D.K. and B.K. (FC–S No. 04–09743)**

and

**In the Interest of B.A N., Jr. (FC–S No. 04–09756).**

Nos. 27514, 27515.

Intermediate Court of Appeals of Hawai'i.

April 13, 2007.

Richard S. Kawana, on the briefs, Honolulu, for Mother–Appellant.

Susan B. Brandon and Mary Anne Magnier, Deputy Attorneys General, on the briefs, for Petitioner–Appellee.

BURNS, C.J., WATANABE and FUJISE, JJ.

**Opinion of the Court by BURNS, C.J.**

The mother (Mother) of the three minor children involved in these two consolidated cases appeals from the August 1, 2005 Order Awarding Permanent Custody and August 24, 2005 Orders Concerning Child Protective Act that denied Mother's motion for recon-

sideration. Both orders were entered in the Family Court of the First Circuit.[1]

FC–S No. 04–09743 (Appeal No. 27514) pertains to two of Mother's children by one father. FC–S No. 04–09756 (Appeal No. 27515) pertains to one of Mother's children by a different father. Although they are separate cases, they were jointly heard in the family court. We affirm.

## BACKGROUND

D.K. was born on March 31, 1994. B.K. was born on February 13, 1995. On May 26, 2004, the State of Hawai'i Department of Human Services (DHS) petitioned for temporary foster custody of D.K. and B.K. and thereby commenced FC–S No. 04–09743. The petition was granted on May 28, 2004.

B.A N., Jr. (B.A N.), was born on May 31, 2004.

On June 2, 2004, in D.K.'s and B.K.'s case, Judge Paul T. Murakami appointed Joseph Dubiel, Esq., as counsel for Mother and ordered

> that pursuant to HRS [Hawaii Revised Statutes] Sections 560:5–105, 571–8.5(8), 571–24, 571–46(8), 571–47, 578–17, 584–9, 587–34 and/or HFCR [Hawai'i Family Court Rules] 17(c) and 153, [James T. Wada, Esq.] be appointed guardian ad litem to protect the interests of [D.K. and B.K.] until final disposition of the case or unless sooner discharged by the court subject to the 'Duties of a Guardian Ad Litem (GAL)' set forth on the reverse of this Order Appointing Guardian Ad Litem and incorporated herein.

The following are the " 'Duties of a Guardian Ad Litem (GAL)' set forth on the reverse of this Order Appointing Guardian Ad Litem":

### THE DUTIES OF A GUARDIAN AD LITEM (GAL)

The Guardian Ad Litem (GAL) is a full participant in the court proceeding and is the only party whose sole duty is to protect the child's needs and interests. The GAL assumes the role of an advocate for the child's interests and in no way repre-

---

1. Judge Paul T. Murakami presided.

sents the petitioner (usually an agency) or the respondents (usually the parents or custodians).

In fulfilling this child-centered role, the GAL performs five important and interrelated duties. The GAL:

1. Acts as an independent fact finder (or investigator) whose task it is to review all relevant records and interview the child, parents, social workers, teachers and other persons to ascertain the facts and circumstances of the child's situation.

2. Ascertains the interests of the child, taking into account the child's age, maturity, culture and ethnicity including, as appropriate, explaining the court proceedings to the child in language and terms that the child can understand and maintaining a trusting meaningful relationship with the child via face-to-face contact.

3. Seeks cooperative resolutions to the child's situation within the scope of the child's interest and welfare.

4. Provides written reports of findings and recommendations to the court at each hearing to assure that all the relevant facts are before the court, unless otherwise ordered by the court.

5. Promptly provide[s] a written report to the court if the services are not being made available to the child and/or families, if the family fails to take advantage of such services, or if such services are not achieving their purpose and brings to the court's attention any violation of orders, new developments or changes.

**2.** Hawaii Revised Statutes (HRS) § 587–73 (Supp.2005) states:

**Permanent plan hearing.** (a) At the permanent plan hearing, the court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25, including but not limited to the report or reports submitted pursuant to section 587–40, and determine whether there exists clear and convincing evidence that:

(1) The child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 are not

On June 4, 2004, DHS petitioned for temporary foster custody of B.A N. On June 15, 2004, effective June 7, 2004, Judge Michael F. Broderick appointed James T. Wada, Esq., (GAL Wada) as guardian ad litem for B.A N. and used the same form that Judge Murakami had used on June 2, 2004, in D.K.'s and B.K.'s case. In B.A N.'s case, on June 30, 2004, and July 7, 2004, Joseph Dubiel, Esq., filed a "Settlement Pretrial Statement" as attorney for Mother. On July 8, 2004, in B.A N.'s case, Judge Nancy Ryan appointed Joseph Dubiel, Esq., as "Consulting Counsel" for Mother "to consult with [Mother] until the final disposition of the case unless sooner discharged by the court." On July 15, 2004, (a) Mother stipulated to DHS's foster custody of B.A N. and the court so ordered, and the court ordered that "Dubiel shall remain appointed to this matter as Mother's counsel until the 8/23/04 hearing[.]"

At an August 23, 2004, review hearing, Thomas A.K. Haia, Esq., (Haia) appeared as "consulting counsel" for Mother in both cases. At review hearings on February 15, 2005, and March 22, 2005, Haia appeared as "consulting counsel" for Mother in B.A N.'s case, and as "counsel" for Mother in the case of D.K. and B.K.

The following occurred in both cases. On June 6, 2005, DHS filed a Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan.[2] On June 14, 2005, Patricia Brady, Esq., (Brady) appeared as "counsel" for Mother and Judge Lillian Ramirez–Uy entered Orders concerning Child Protective Act that stated in part:

Based upon the record and/or the evidence presented, the Court finds that:

presently willing and able to provide the child with a safe family home, even with the assistance of a service plan;

(2) It is not reasonably foreseeable that the child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed two years from the date upon which the child was first placed under foster custody by the court[.]

*A* Under the circumstances that are presented in this case, DHS has made reasonable efforts to finalize the permanency plan which in this case is [X] reunification ...;

. . . .

THEREFORE, IT IS HEREBY ORDERED THAT:

*1* Foster custody is continued;

. . . .

*4* All parties are ordered to appear at a (*contested permanent plan*) hearing on *8-1-05* at *8:30-4:30 p.*m., before the presiding judge;

At the trial on August 1, 2005, Brady appeared as "trial counsel for [M]other". After DHS and Mother presented evidence, the following occurred:

THE COURT: Please stand to be sworn, sir.

THE CLERK: Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

MR. WADA: Yes.

THE COURT: Thank you, Mr. Wada. Mr. Wada, as the guardian ad litem in this matter, do you have a position on the motions presented by the Department of Human Services?

MR. WADA: Yes, Your Honor.

. . . .

THE COURT: Briefly, please.

MR. WADA: Yes, at this point I believe that the motion should be granted based on the fact that the parents are not currently able or willing—and willing to provide a safe home for their children, even with the assistance of a service plan, and will not be able to do so within the reasonably foreseeable future. And that is based on the past where parents have failed to make substantial improvements in their service plan requirements. And also, the fact that I do not believe that from her testimony, [M]other can work with the current social worker to effect change and do the services. And for those reasons, I make my statement.

THE COURT: [Counsel for DHS], do you have any questions of Mr. Wada?

[COUNSEL FOR THE DHS]: No, Your Honor.

THE COURT: [Counsel for Mother], any questions of Mr. Wada?

[COUNSEL FOR MOTHER]: No.

. . . .

THE COURT: We'll take a short recess. . . .

. . . .

THE COURT: The record reflect[s] parties previously present before the court. For the record, does [DHS] have any rebuttal evidence to present at this time?

[COUNSEL FOR DHS]: No.

THE COURT: Please proceed to argument.

After the trial, the court entered the Order Awarding Permanent Custody that is challenged by this appeal. This order terminated Mother's parental rights, appointed the State of Hawai'i Director of Human Services as permanent custodian of the three children, and ordered the May 23, 2005 Permanent Plan into effect. The goal of that plan is adoption by the foster parents. On August 24, 2005, the court denied Mother's April 11, 2005 motion for reconsideration. On September 23, 2005, Mother filed a notice of appeal. On November 4, 2005, the court entered its Findings of Fact and Conclusions of Law (FsOF and CsOL).

### DISCUSSION

After carefully reviewing the record and the briefs submitted by the parties, and duly considering and applying the law relevant to the issues raised and arguments presented, we conclude that the following of Mother's points on appeal do not merit discussion:

1. Numerous specified FsOF are clearly erroneous and numerous specified CsOL are wrong.

2. The family court must expressly find that the DHS made reasonable efforts to reunite Mother with her children before it can consider terminating Mother's parental

rights and the family court failed to do so in this case.

3. The record lacks the required clear and convincing evidence that the DHS made reasonable efforts to reunite Mother with her children.

4. Mother was denied due process at trial [b]ecause the social workers, whose actual observations and actions were the basis of the reports and exhibits that were submitted into evidence "subject to cross-examination," were not presented as witnesses by the State and therefore did not testify, [Mother] was denied meaningful and substantial cross-examination of the exhibits presented by the State, in violation of her constitutional rights to due process under the Fifth and Fourteenth Amendments, and Article I, Section 5, of the Hawaii Constitution.

. . . .

... [Mother's] abilities to understand the proceedings as a lay person, according to the State's own expert psychologist, was compromised by mental health issues that required psychiatric and therapeutic intervention. Moreover, [Mother] was not fully represented by counsel. Her court-appointed attorney was merely "consulting counsel," and not her full-time attorney. 6/14/05 TR.2.

We will discuss Mother's fifth point on appeal wherein Mother contends:

To the extent that the guardian ad litem (GAL) for the children testified at trial, it is respectfully submitted that such testimony constituted error and must be stricken, and such error substantially tainted the findings, conclusions, and decision of the court. The GAL in this case is a licensed attorney and performed as the court appointed attorney and advocate for the children. As a licensed attorney, the GAL reserved the right to call witnesses and submit exhibits in his Settlement/Pretrial Statement.[3] He conducted cross-examination at trial. He argued as an attorney

advocate at the conclusion of the evidence. Rule 3.7(a), Hawai'i Rules of Professional Conduct, provides in pertinent part: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness...." The exceptions to the rule are not applicable here, especially since the GAL in fact testified at trial. Comment (1) to Rule 3.7 states in pertinent part: "Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." In this case, the testimony of the GAL went to the very merits of the case at bar, were referred to by the attorney for the State in support of its position and clearly was prejudicial to the opposing party, [Mother]. Such testimony in violation of the court's own rules tainted the decision of the trial court and further supports the need for reversal in this case.

(Footnotes omitted; record citations omitted; footnote added.)

As noted above, the testimony of GAL Wada was no more than his GAL report submitted orally and under oath.

It appears that Mother thinks that a lawyer who is a child's court-appointed GAL in an HRS Chapter 587 Child Protective Act case is *ipso facto* the child's lawyer. We disagree. The phrase "ad litem" is the Latin way of saying "[f]or the purposes of the suit". Black's Law Dictionary 46, (8th ed.2004). A "guardian ad litem" is "[a] guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." *Id.* at 725.

"[I]t is necessary to determine whether the lawyer has been appointed as a guardian *ad litem* (GAL) charged with representing the child's best interests, or as an advocate, serving as counsel to the child.... From the distinction between guardian and advocate flow a series of important consequences, including such matters as whether the attorney may file motions and exam-

---

**3.** In both cases, the Settlement/Pretrial Statement filed by Guardian Ad Litem James T. Wada, Esq., on July 12, 2005, stated that although "[n]o witnesses will be offered[,]" the "[p]arties reserve the right to call other persons who may be deter-

mined to possess relevant evidence ..., including any and all witnesses listed or called by any other party and such rebuttal witnesses and exhibits as warranted by proof and testimony submitted at the hearing."

ine witnesses, whether the attorney may file a report with the court, and whether the attorney may testify. Moreover, in most jurisdictions a GAL has an absolute quasi-judicial immunity for lawsuits for negligence.... Although a non-lawyer cannot serve as counsel to the child, such an individual might be a GAL or 'special advocate' in some states. Courts have struggled to clarify these roles, and define how children's representatives may participate in different types of proceedings." Homer H. Clark Jr. & Ann Laquer Estin, *Domestic Relations: Cases and Problems* 1078 (6th ed.2000).

*Id.* HRS § 587–34 (1993) is evidence of the struggle "to clarify these roles." It states:

**Guardian ad litem; court appointed counsel.** (a) The court shall appoint a guardian ad litem for the child to serve throughout the pendency of the child protective proceedings under this chapter. The court may appoint additional counsel for the child pursuant to subsection (c) or independent counsel for any other party if the party is an indigent, counsel is necessary to protect the party's interests adequately, and the interests are not represented adequately by another party who is represented by counsel.

(b) A guardian ad litem shall:

(1) Be allowed access to the child by the caretakers of the child whether caretakers are individuals, authorized agencies, or health care providers;

(2) Have the authority to inspect and receive copies of any records, notes, and electronic recordings concerning the child that are relevant to the proceedings filed under this chapter without the consent of the child or individuals and authorized agencies who have control of the child; and

(3) Be given notice of all hearings and proceedings, civil or criminal, including, but not limited to, grand juries, involving the child and shall protect the best interests of the child therein, unless otherwise ordered by the court.

(c) A guardian ad litem appointed pursuant to subsection (a) shall report to the court and all parties in writing at six month intervals, or as is otherwise ordered by the court, regarding such guardian ad litem's activities on behalf of the child and recommendations concerning the manner in which the court should proceed in the best interests of the child; provided that such guardian ad litem shall make face to face contact with the child in the child's family or foster home at least once every three months. A guardian ad litem shall inform the court of the child's perceived interests if they differ from those being advocated by the child's guardian ad litem. If the child and the child's guardian ad litem are not in agreement, the court shall evaluate the necessity for appointing special counsel for the child to serve as the child's legal advocate concerning such issues and during such proceedings as the court deems to be in the best interests of the child.

(d) When the court determines, after such hearing as the court deems to be appropriate, that a party is incapable of comprehending the legal significance of the issues or the nature of the child protective proceedings, the court may appoint a guardian ad litem to represent the interests of that party; provided that a guardian ad litem appointed pursuant to this section shall investigate and report to the court in writing at six month intervals, or as is otherwise ordered by the court, regarding the current status of the party's disability, including, but not limited to, a recommendation as to available treatment, if any, for the disability and a recommendation concerning the manner in which the court should proceed in order to best protect the interests of the party in conjunction with the court's determination as to the best interests of the child.

(e) A guardian ad litem or counsel appointed pursuant to this section for the child or other party may be paid for by the court, unless the party for whom counsel is appointed has an independent estate sufficient to pay such costs. The court may order the appropriate parties to pay or reimburse the costs and fees of the guardian ad litem and other counsel appointed for the child.

In HRS § 587–34(a), the use of the statements "shall appoint a guardian ad litem for the child" and "may appoint additional counsel for the child" can be interpreted to mean that "a guardian ad litem" is "counsel". In contrast, the word "or" in the words "guardian ad litem or counsel" in HRS § 587–34(e) clearly indicates the opposite.

Hawai'i Family Court Rules (HFCR) Rule 17(c) (2006) is further evidence of the struggle. It states: "Minors or Incompetent Persons. The court may appoint a guardian ad litem for a minor or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the minor or incompetent person." The words "may appoint a guardian ad litem for a minor or incompetent person not otherwise represented in an action" can be interpreted to mean that an incompetent person is "represented" by a guardian ad litem in an action. In contrast, HFCR Rule 153 (2006) clearly distinguishes between "a guardian ad litem" and a "counsel". It states:

> Whenever these rules authorize notices to be given to a "child," the word shall be construed to refer to a child 12 years of age or more or as defined by statute. If a child is less than 12 years old, the child's legal parent or parents, custodian or guardian shall receive the notices authorized by these rules. If the interests of the child and those of the parents appear to conflict, or if neither parent is available, the court shall appoint a guardian ad litem, or counsel, or both, to protect the interests of the child. Such a guardian or counsel shall receive the notices authorized by these rules.

As indicated in *Fox v. Wills*, 390 Md. 620, 890 A.2d 726 (2006); George S. Mahaffey Jr., *Role Duality and the Issue of Immunity for the Guardian Ad Litem in the District of Columbia*, 4 J.L. & FAM. STUD. 279 (2002); and American Academy of Matrimonial Lawyers, *Representing Children: Standards for Attorneys and Guardians Ad Litem in Custody or Visitation Proceedings (With Commentary)*, 13 J. AM. ACAD. MATRIMONIAL LAW. 1 (1995), this struggle "to clarify these roles" is nationwide. The following is a further indication:

> On May 8, 2000, the Delaware State Bar Association, Committee of Professional Ethics, issued Opinion 2001–1 . . . . The issues fell into three main areas:
>
> a. Whether the duty of the guardian ad litem to represent the best interests of the child/ward/protected person conflicted with the relevant Delaware Rule of Professional Responsibility requiring an attorney to represent the client's interests and abide by their decisions.
>
> b. Whether the duty of the guardian ad litem to ascertain the wishes of the child/ward/protected person and make them known to the Court and otherwise participate in the proceedings violated the Rule governing confidentiality obligations to a client.
>
> c. Whether the investigatory and reporting obligations of the guardian ad litem conflicted with the Rule prohibiting an attorney from acting as an advocate at a trial in which the attorney is likely to be a necessary witness.
>
> The Committee first stated its opinion that "an attorney guardian ad litem does not serve directly as counsel for the child under a traditional attorney/client relationship". However, to some extent this was based on the somewhat unique Delaware statutory language, and the Committee noted the analysis of the Wyoming Supreme Court, under a different statutory scheme, where the roles of attorney and guardian ad litem are combined. There, the Court held that the attorney does owe attorney/client obligations directly to the child. The Committee went on to analyze the difference as follows:
>
> . . . Several authorities and commentators who have considered the question have noted the potential ambiguity in roles that arises when a lawyer is appointed as guardian ad litem, as distinct from being appointed as the child's attorney. *Jean Kob Peters, Representing Children in Child Protective Proceedings: Ethical and Practical Dimensions*, Chapter 2 (1997). A lawyer appointed the child's attorney is a lawyer

who provides legal services for a child and who owes the same duties of undivided loyalty, confidentiality and competent representation to the child as is due an adult client, subject only to the modifications of Rule 1.14 (Client under a disability). In contrast, a lawyer appointed as "guardian ad litem" for a child is generally regarded as an officer of the court appointed to protect the child's best interests without being bound by the child's express preferences. *Id, American Bar Association Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases* (approved by the American Bar Association House of Delegates, February 5, 1996).

. . . .

The Committee summarized its initial discussion by stating:

> To summarize, a lawyer appointed attorney guardian ad litem acts as attorney for himself in his capacity as guardian ad litem charged with representing the best interests of the child; he does not act directly as attorney for the child in a pure attorney/client relationship.

The Committee next analyzed whether the statutory listing of duties and powers overrode the Rules of Professional Responsibility:

> To the extent a conflict exists between the statutory mandate and the Rules of Professional Responsibility ( . . . ), the Rules of Professional Responsibility would govern the lawyer's role as an attorney in carrying out an attorney guardian ad litem appointment. Stated otherwise, it is no answer to an apparent ethical dilemma for an attorney to rationalize that the statute authorizes or mandates behavior that would otherwise violate the Rule of Professional Conduct.

. . . .

Given the somewhat convoluted Delaware idea that a guardian ad litem is an attorney for himself in addition to being an officer of the court, the Committee nonetheless came to what is probably sound advice for the simpler Idaho situation. In essence, communicate to the child/ward/protected person (if possible) that:

1. the guardian ad litem will represent the person's best interests, which may or may [not] be the same as the person's wishes;

2. that the guardian ad litem will use information gained in interviews with the person and others to further the person's best interests, but that this information may be disclosed to the Court, including the wishes of the person.

As to the third question, being both advocate and witness, the Committee correctly pointed out that:

> That is, the attorney guardian ad litem ought to ... provide independent factual information to the Court through the testimony and exhibits of others.

While the Idaho situation, at least when the attorney is acting solely as a guardian ad litem, does not present all the complexities of the Delaware situation, the guardian ad litem must remember that he or she is not generally a witness, nor especially an expert witness. The guardian ad litem should, except for actual factual statements such as the expressed wishes of the child/ward/protected person, or perhaps the actions of the child/ward/protected person to [the] extent actually observed by the guardian ad litem, mainly analyze and recommend based on the visitor's report or other credible evidence or documents and the guardian ad litem's perception of the best interests standard.

Robert L. Aldridge, Idaho State Bar, *Ethics and the Attorney as Guardian Ad Litem*, 49 ADVOC. 21 (June 2006).

In light of the above, we conclude that (1) Mother's fifth point on appeal is without merit, and (2) the legislature and the family court have work to do to describe the extent and limits of the rights and duties of a guardian ad litem for a child appointed pursuant to HRS § 587-34.

## CONCLUSION

Accordingly, we affirm the August 1, 2005 Order Awarding Permanent Custody, and the August 24, 2005 Orders Concerning Child

Protective Act that denied Mother's motion for reconsideration.