**<u>NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER</u>**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000058
08-FEB-2024
07:50 AM
Dkt. 73 SO**

NO. CAAP-23-0000058

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF K.K., G.L. and C.F.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. FC-S NO. 21-00048)

<u>SUMMARY DISPOSITION ORDER</u>
(By: Wadsworth, Presiding Judge, Nakasone and McCullen, JJ.)

Father-Appellant (**Father**) appeals from the January 20, 2023 Order Terminating Parental Rights and the March 15, 2023 Findings of Fact (**FOFs**) and Conclusions of Law (**COLs**), both entered by the Family Court of the First Circuit (**Family Court**).[1]

On appeal, Father contends: (1) there was insufficient evidence to demonstrate that DHS made reasonable efforts and/or provided Father with a reasonable opportunity to reunify with his child, C.F. (**Child**) because DHS failed to

---

[1] The Honorable Brian A. Costa presided.

provide Father with "reasonable visitation or any services while Father was incarcerated" and made "little to no attempts to contact" Father during his incarceration; and (2) there was insufficient evidence that the October 26, 2022 Permanent Plan (**10/26/22 Permanent Plan**) was in Child's best interest. In connection with these points of error, Father challenges FOFs 34-35, 49, 51-52, 67, 82-84, 88-91, 93-95, and COLs 11-14.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Father's contentions below, and affirm.

The record and the Family Court's unchallenged findings reflect the following.[2] On March 3, 2021, Petitioner-Appellee Department of Human Services (**DHS**) filed a "Petition for Temporary Foster Custody of Child" (**Petition**) after police took Child into protective custody as a result of Mother-Appellee (**Mother**) and Mother's boyfriend's (not Father) failure to "provide a safe and sober environment for the children." Father was "not deemed . . . a perpetrator of harm at the time of the DHS' intervention[.]" On March 5, 2021, the Family Court granted temporary foster custody of Child to DHS and Child entered foster custody the same day.

On April 25, 2021, Child's guardian ad litem (**GAL**) reported informing Father that the GAL was concerned with placing Child with Father because Father lived in the same building as Mother. DHS had several concerns about Mother, including, without limitation, her inability to provide a safe family home for Child due to her substance abuse and domestic violence issues, and she showed no signs of rehabilitation. According to the DHS social worker Makela Aluesi's (**Aluesi**)

---

[2] Unchallenged findings of fact are binding on the appellate court. Balogh v. Balogh, 134 Hawai'i 29, 33 n.3, 332 P.3d 631, 635 n.3 (2014).

June 21, 2021 report, Father attended scheduled visitations with Child from May 19, 2021.

Father failed to appear at court hearings scheduled for May 27, 2021, June 28, 2021, January 31, 2022, and was defaulted. FOFs 21, 22, 27. The service plan gave Father a number of tasks "based on the safety issues" outlined in the "Safe Family Home Report," requiring Father to participate in substance abuse assessment and treatment, a psychological evaluation and treatment, parenting classes, home-based services, and to cooperate with the DHS social worker. As of the January 11, 2022 Safe Family Home Report, Aluesi reported that Father was "fairly consistent with visitations but sporadic with communication with DHS."

On March 10, 2022, Mother informed Aluesi that Father had been arrested. Father was incarcerated at Oʻahu Community Correctional Center (**OCCC**) from February 2022 until January 10, 2023 for a probation violation. FOF 64.

On April 20, 2022, DHS filed a motion to terminate parental rights (**TPR Motion**) and sought a permanent plan proposing adoption or permanent custody of Child. At the January 18, 2023 trial on the TPR Motion, the Family Court granted the motion and ordered the termination of Father's parental rights to Child. On March 15, 2023, the Family Court entered FOFs and COLs in support of its order terminating Father's parental rights.

> The family court's determinations . . . with respect to (1) whether a child's parent is willing and able to provide a safe family home for the child and (2) whether it is reasonably foreseeable that a child's parent will become willing and able to provide a safe family home within a reasonable period of time present mixed questions of law and fact; thus, inasmuch as the family court's determinations in this regard are dependant upon the facts and circumstances of each case, they are reviewed on appeal under the clearly erroneous standard. Likewise, the family court's determination of what is or is not in a child's best interests is reviewed on appeal for clear error.

3

In re G.L., No. CAAP-20-0000742, 2021 WL 3056662, at *2 (Haw. App. July 20, 2021) (SDO) (citation omitted).

(1) Father argues there was "insufficient evidence for the lower court to find that DHS made reasonable efforts to reunify [Father]" and a "reasonable opportunity to reunify with his Child prior to termination of his parental rights." Specifically, Father claims that DHS failed to provide Father with services and visits with Child while he was incarcerated, failed to contact Father while he was incarcerated, and failed to give Father reasonable opportunity to "demonstrate his ability to provide a safe family home" while he was incarcerated. The record does not support Father's claims.

The record and the unchallenged findings reflect that during the period that Father was incarcerated, DHS had sent a certified letter to Father at OCCC informing Father that DHS had been attempting to contact him, and requested Father contact DHS; Aluesi sent letters, attempted phone calls, and tried to offer a phone call with Child through the OCCC case manager. DHS, however, did not receive any contact from Father until January 17, 2023, the day before the TPR trial. Father had been released from OCCC on January 10, 2023, on supervised release into the Hoʻomau Ke Ola residential substance abuse program. FOFs 64-66. DHS did not know that Father had completed a substance abuse assessment in January 2023, which recommended residential treatment. FOF 65. The Family Court found that during his incarceration, Father "did not make efforts to call or contact the DHS," as required in the court-ordered service plan. FOF 74.

By the time of the January 18, 2023 TPR trial, Child had been in continuous foster custody for approximately 22 months. FOF 44. Father was also pending resentencing at the time of the TPR trial. FOF 64. At the point Father was

released from OCCC on January 10, 2023, Father had to remain in the Hoʻomau Ke Ola program for 60-75 days and needed 7-10 months of treatment to be clinically discharged. FOFs 66, 68-70.

The record reflects that it was not reasonably foreseeable that Father would become able, even with a service plan, to provide a safe home for Child within a reasonable period of time, since Child had been in continuous foster custody for about 22 months by the time of the TPR trial.[3] See Hawaii Revised Statutes (**HRS**) § 587A-33(a) (2018); In re M.P., No. CAAP-18-0000731, 2019 WL 1614717, at *2 (Haw. App. Apr. 16, 2019) (**SDO**) (counting father's incarceration period in the HRS § 587A-33(a)(2) maximum time). Accordingly, FOFs 34-35, 67, 82-84, and 94, and COLs 11-12, which are mixed findings and conclusions, are not clearly erroneous. See In re G.L., 2021 WL 3056662, at *2.

**(2)** Father contends that the Family Court erred in concluding that the 10/26/22 Permanent Plan is in Child's best interest, and challenges FOFs 88-91 and COLs 13-14, because (a) the Resource Caregivers' (**RCGs**) home that they had recently moved to was not yet licensed; and (b) the GAL did not testify as to whether the 10/26/22 Permanent Plan was in Child's best interest.[4]

The Family Court had authorized DHS to place Child with RCGs in Michigan following a home study, on April 22, 2022.

---

[3]    "Two years is the maximum, not minimum, amount of time within which a parent must become willing and able to provide a safe family home." In re A.K., No. CAAP-21-0000455, 2022 WL 1134991, at *3 (Haw. App. Apr. 18, 2022) (SDO) (citation omitted).

[4]    Father presented no argument or authority to support his additional contention that the "goal of the Permanent Plan was adoption to an appropriate caregiver but did not specify who was the appropriate caregiver for which child." We do not address it, but note that "[s]pecification of adoptive parents is not required in a proposed permanent plan under [HRS] § 587A-32 (Supp. 2013)." In re S.P., No. CAAP-13-0003106, 2014 WL 1658601, at *1 (Haw. App. Apr. 25, 2014).

FOF 40.  Child was still living with RCGs at the time of the TPR trial.  FOF 47.  Child was bonded to RCGs, and said she wanted to change her name, remain with RCGs, and felt safe in RCGs' home.  FOF 48.  The record reflects that Aluesi testified that the 10/26/22 Permanent Plan "with the goal of adoption" by maternal relative RCGs was in Child's best interest.  While the home where Child was, was not yet licensed at the time of the TPR trial, the DHS was not required to designate a licensed home because the 10/26/22 Permanent Plan's goal was adoption.  Aluesi testified the Permanent Plan was still in Child's best interest, and for Child to remain with the RCGs in Michigan even though the home was not yet formally licensed.  The Family Court found Aluesi's testimony, as an expert witness in child protective and welfare services, to be credible.  FOFs 97, 100, 101.

Father cites no authority for his assertion that the GAL needed to be sworn in and testify at the TPR trial to have made this recommendation.  In closing argument, the GAL stated agreement with Aluesi that the 10/26/22 Permanent Plan was in the best interest of Child, and urged the Family Court to grant the TPR Motion.  This was appropriate in his capacity as GAL. See In re K Children, 120 Hawaiʻi 116, 122, 202 P.3d 577, 583 (2007).[5]  Accordingly, FOFs 88-91 and COL 13-14, which are mixed

---

[5]     In re K Children states:

> The guardian ad litem should, except for actual factual statements such as the expressed wishes of the child/ward/protected person, or perhaps the actions of the child/ward/protected person to [the] extent actually observed by the guardian ad litem, mainly analyze and recommend based on the visitor's report or other credible evidence or documents and the guardian ad litem's perception of the best interests standard.

120 Hawaiʻi at 122, 202 P.3d at 583 (quoting Robert L. Aldridge, Idaho State Bar, Ethics and the Attorney as Guardian Ad Litem, 49 ADVOC. 21 (June 2006)).

findings and conclusions, are not clearly erroneous.  See In re G.L., 2021 WL 3056662, at *2.

For the reasons discussed above, we affirm the January 20, 2023 Order Terminating Parental Rights and the March 15, 2023 Findings of Fact and Conclusions of Law by the Family Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, February 8, 2024.

On the briefs:

Crystal M. Asano,
for Appellant-Father.

Kellie M. Kersten,
Julio C. Herrera,
Deputy Attorneys General
for Petitioner-Appellee
The Department of Human
Services.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge